RAY B. HORTON, Appellant, v. W. A. CLARK ET AL., Composing State Board of Health.—293 S. W. 362.

Court en Banc, February 15, 1927.

**1. PHYSICIAN: Revocation of License: Complaint: Oath.** The complaint charging that a certain person obtained his license to practice medicine by false representations is not insufficient because not verified by the oath of the complainant. The power of the State Board of Health to revoke the license of one who is thereby authorized to practice medicine and surgery does not exist apart from the statute, and the statute (Sec. 7336, R. S. 1919) does not require the complaint to be verified by the oath of the complainant; indeed, it contains no requirement that the proceeding shall be instituted by a filing of a complaint or information, but comtemplates that the board may act upon information, from whatever source and however communicated, it may deem trustworthy.

**2. ———: ———: Pre-Medical Education of Applicant: Insufficient Charges: Graduation: Fraud.** Under the statute (Sec. 7332, R. S. 1919) an applicant for a license to practice medicine must show, as a pre-requisite to his right to the taking of an examination for such a license, that he is a graduate of an accredited high school, or its equivalent, and the State Board of Health cannot require more of him with reference to his pre-medical education. The only evidence receivable that he is a graduate is a certificate of graduation, but the length of time he attended the school issuing the certificate is of no concern to the board, provided the certificate is genuine and was issued by a school coming within the statutory designation. And as the statute (Sec. 7336, R. S. 1919), in a proceeding to revoke the license of one who is thereby authorized to practice medicine and surgery, requires the notice to him to contain "an exact statement of the

charges," a notice, which, after charging that the applicant for a license did not attend a certain high school during· the years he stated in his application he did, charges that he "was not graduated from said school under the ordinary and regular procedure, but his record in that school was fraudulent and procured through fraud," is too indefinite and uncertain, and does not warrant a hearing. The applicant might have received a certificate of graduation, although the ordinary and regular procedure was not followed; and if it is intended to charge that he was not in fact a graduate of said high school, or that he exhibited to the board a certificate falsely concocted, there should be plain and direct statements to that effect.

3. ———: ———: **Medical Education: Four Years' Requirement.** But a charge that the applicant secured his license to practice medicine and surgery by falsely and fraudulently stating in writing that he had attended a medical college from October 5, 1918, to May 15, 1919, and from October 1, 1919, to June 2, 1920, is sufficiently definite to warrant a hearing by the State Board of Health of a proceeding to revoke his license, where the statements were made for the evident purpose of establishing that the diploma exhibited by him was that of a school of four years' requirements. The statute requiring that the applicant for a license shall have received "a diploma from some medical college of four years' requirements" means a college which requires its students, as a condition of graduation, to attend its sessions continuously and regularly for and during a full term of four years, barring reasonable vacation periods.

4. ———: ———: **Hearing by Board of Health: Injunction: Truth of Charges: Certiorari.** The State Board of Health served notice on plaintiff, who had obtained a license to practice medicine and surgery, containing charges to the effect that, at the time he applied for a license, he had falsely and fraudulently stated in writing that he had attended a medical college for four years. Thereupon the plaintiff filed a bill in equity to enjoin the members of the board from hearing such charges or conducting an inquiry. Held, that the only question being whether the charges authorize a hearing by the board, and that question having been decided in the affirmative, the question whether the charges are true is a matter to be determined in the first instance by the board, and evidence bearing on that issue is not now for consideration; for if the charges are sustained and plaintiff's license is revoked, he can have the findings of the board reviewed upon **certiorari.**

5. ———: ———: ———: **Burden of Proof.** In a proceeding before the State Board of Health, to revoke the license of a physician on the ground that it was secured by false and fraudulent statements made in his application therefor, the burden is not upon the board, or upon the complainant, to prove that the medical college which granted him a diploma was not a college of four years' requirements, but it is his duty to furnish evidence that the college was one of such requirements at the time his diploma was issued.

6. ———: ———: **False Evidence.** If the applicant knowingly furnished false evidence, for the purpose of deceiving the State Board of Health, and which did deceive it, and thereby secured his license to practice medicine and surgery, that is a sufficient ground under the statute for the revocation of the license.

7. ———: ———: **Constitutional Statute.** The statute giving to the State Board of Health power to grant to competent persons a license to practice medicine and surgery and to revoke their licenses for enumerated reasons is not unconstitutional.

8. ———: ———: ———: **Property: Police Power.** The right of a physician to practice medicine and surgery is not an unqualified right. It is always subject to such restrictions as the Legislature in the exercise of the police power may impose. The license granted by a board of experts,

created in the manner prescribed by law, to determine whether a person applying for it meets the minimum qualifications prescribed by the law, confers upon the licensee no right whatever in the way of a contract with the State; it merely furnishes him immunity from punishment for practicing medicine or surgery. And the power to revoke a license is the same as the power to grant it.

9. CONSTITUTIONAL STATUTES: Property: Police Power: Due Process: Judicial Hearing: Arbitrary Exercise of Power. Due process of law does not always mean a court hearing. Due process, or the law of the land, and those clauses of the Constitution declaring that no person shall be deprived of his property without due process of law, mean such a just and orderly exercise of the powers of government as the settled maxims of law permit and sanction, under such safeguards as these maxims prescribe for a class of cases, and some of these powers may be exercised by an executive arm of the government. The State Board of Health is not competent to exercise, and does not exercise, judicial power. But it is a board of experts, created by law, with power to grant licenses to practice medicine and surgery to persons, found upon orderly inquiry to possess the essential qualifications prescribed by law, and to revoke the licenses for enumerated reasons, among others, that the license was granted on false and fraudulent statements made in the application therefor; and the exercise of either power is not the exercise of judicial power, but if done in the manner and for the reasons prescribed by law is due process; if done arbitrarily, or oppressively, or without jurisdiction, it is not due process.

10. ———: ———: ———: ———: Relief by Certiorari. The statute empowering the State Board of Health to revoke licenses to practice medicine and surgery for prescribed reasons would not have been void as denying due process of law if its provisions for reviewing the action of the board by certiorari had been entirely omitted. Such an omission would not have prevented a physician whose license has been revoked from obtaining relief in the courts in a case in which the board acted oppressively, or arbitrarily, or without jurisdiction.

Corpus Juris-Cyc. References: Constitutional Law, 12 C. J., Section 1075, p. 1275, n. 65. Evidence, 23 C. J., Section 1846, p. 75, n. 33. Injunctions, 32 C. J., Section 384, p. 242, n. 70. Physicians and Surgeons, 30 Cyc., p. 1557, n. 91, 94, 95.

Appeal from Cole Circuit Court.— Hon. Henry J. Westhues, Judge.

AFFIRMED.

Grover, Tipton & Graves for appellant.

(1) The unsworn and unverified complaint or charges filed with the State Board of Health are insufficient in law to confer jurisdiction upon said board to conduct the threatened inquiry. In re Sizer, 267 S. W. 927; State ex rel. v. Gebhardt, 87 Mo. App. 546: In re Burr, 6 L. Ed. 152; State v. Kirke, 12 Fla. 296; Walker v. Commonwealth, 8 Bush (Ky.) 96; State ex rel. v. Robinson, 253 Mo. 284; Hinkle v. Lovelace, 204 Mo. 208. (2) The charges made in the complaint filed with the State Board of Health are insufficient: (a) The complaint attempts to say that the appellant's preliminary

education was insufficient, but does not state that: first, Purdy High School is not an accredited high school; second, that appellant is not a graduate of said high school, nor that appellant did not furnish satisfactory evidence of graduation from said high school; nor that he did not have an equivalent of a high school education. (b) Said complaint does not allege that the appellant did not furnish satisfactory evidence from some medical college of four years' requirement, including two years' experience in operative and hospital work at time of graduation, but merely alleges that plaintiff did not continuously and regularly attend the St. Louis College of Physicians and Surgeons from October 5, 1918, to May 15, 1919, nor from October 1, 1919 to June 2, 1920. (c) Sec. 7332, R. S. 1919, as amended by Laws 1921, p. 472, is highly penal and must be strictly construed against the board and in favor of the appellant. First, the record shows that appellant complied with Section 7332 by furnishing: (a) a certificate of graduation from Purdy High School; (b) a diploma from a four-year medical college. Second, appellant furnished a certificate of graduation from the Purdy High School, also appellant furnished a showing of his equivalent of a high school education, either of which entitled him to take the examination. Sec. 7332, R. S. 1919, as amended, Laws 1921, p. 472; State ex rel. v. Robinson, 253 Mo. 271. (3) A license to practice medicine is a property right, or at least a valuable right, and is protected by constitutional guaranties. People v. Lane, 298 Ill. 304; State ex rel. v. McElhinney, 241 Mo. 952; State ex rel. v. Robinson, 253 Mo. 271; Door Co. v. Fuelle, 215 Mo. 421. (4) Sec. 7336, R. S. 1919, empowering the State Board of Health, a ministerial body to revoke a license to practice medicine, is unconstitutional and void, violative and contrary to Article 2 of the Constitution of Missouri, and Articles 5 and 15 of the Amendments to the Constitution of the United States, for the reason it constitutes the taking of property without due process of law and does not afford to one subjected thereto his day in court. 12 C. J. 1241, par. 1018; St. Louis, I. M. & S. Ry. Co. v. Williams, 251 U. S. 63.

*North T. Gentry,* Attorney-General, and *A. B. Lovan,* Assistant Attorney-General, for respondent.

(1) The statute provides that "said notice shall contain an exact statement of the charge and the date and place set for the hearing before the board." This statute is complied with when a copy of the complaint, accompanied with a notice giving the date and place of the hearing, is served on the defendant. Wolf v. Kansas City, 246 S. W. 239. The statute does not require that the complaint be sworn to. The statute will not be made ineffective by technical rules

and construction. State ex rel. v. Goodier, 195 Mo. 559; Sec. 7336, R. S. 1919. (2) The charge is that appellant obtained his license upon false and fraudulent statements. If he is guilty of that charge, the statute authorizes the board to revoke his license. Sec. 7336, R. S. 1919. (3) The respondent concedes that "a license to practice medicine is a property right or at least a valuable right." But, nevertheless, the State Board of Health, under the statute, has the power to revoke the license if it was obtained upon "false and fraudulent statements." Sec. 7336, R. S. 1919; State v. Hathaway, 115 Mo. 46. (4) The books are full of adjudications upholding the validity of statutes similar to the one in question. Out of a great number of cases the attention of the court is directed to the following: State v. Hathaway, 115 Mo. 46; State ex rel. Farber v. Shot, 263 S. W. 805; State ex rel. Hurwitz v. North, 264 S. W. 681.

RAGLAND, J.—Injunction. On the 9th day of June, 1925, there was filed with the State Board of Health a document of which the following is a copy:

"COMPLAINT

"To the State Board of Health:
"Comes the undersigned Ross Hopkins and alleges and charges that one Ray Beeman Horton has been for some time and is now engaged in the practice of medicine and surgery at Purdy, Barry County, Missouri, under and by virtue of a license or certificate granted to him by the Missouri State Board of Health under the date of October 18, 1922; that said license or certificate so granted was secured by false and fraudulent statements and representations made by said Ray Beeman Horton to the Missouri State Board of Health, in that said Ray Beeman Horton stated under oath in his application to the State Board of Health for a license to practice medicine and surgery in this State dated August 29, 1922, that, among other things, he attended the Purdy High School, Purdy, Missouri, for four years during the years 1912-13, 1913-14 and 1915-16; from which institution he claims to have been graduated on May 24, 1916, and that he attended the St. Louis College of Physicians and Surgeons from October 5, 1918, to May 15, 1919, from October 1, 1919, to June 2, 1920, from October 10, 1920, to May 2, 1921, and the Kansas City College of Medicine and Surgery from September, 1921 to May, 1922.

"Whereas in truth and in fact, the said Ray Beeman Horton did not attend the Purdy High School during the years 1912-13, 1913-14, 1915-16, nor was he graduated from the Purdy High School on May 24, 1916, as aforesaid, under the ordinary and regular procedure, but his record in that school upon which the Missouri State Board of Health admitted him to examination was fraudulent and pro-

cured through fraud, and futhermore he did not continuously and regularly attend the St. Louis College of Physicians and Surgeons from October 5, 1918, to May 15, 1919, nor from October 1, 1919, to June 2, 1920, as aforesaid, which the Ray Beeman Horton then and there well knew.

"ROSS HOPKINS."

Thereafter the State Board of Health caused to be issued and served upon the said Ray Beeman Horton (plaintiff herein) a written notice, in words and figures as follows:

"State Board of Health of the State of Missouri,
Jefferson City, Missouri, 30th day of June, 1925.

"NOTICE TO APPEAR:

"*In the Matter of Doctor Ray Beeman Horton.*

"Doctor Horton, Take Notice:

"That there has been filed with the State Board of Health of Missouri, at Jefferson City, on the 9th day of June, 1925, a certain complaint a copy of which is hereto attached and made part of this notice.

"Wherefore, you are hereby notified to appear before the said State Board of Health at the city of St. Louis at the office of Health Commissioner on the 23rd day of July, 1925, at 9 A. M., to answer the said complaint.

"JAMES STEWART, M. D.

"JAMES STEWART,

" (Seal) Secretary, State Board of Health."

The date of the service is not shown by the record here, but after the service the hearing on the charges referred to in the notice was, by agreement presumably, set over until the 17th day of September, 1925.

On September 12, 1925, plaintiff instituted the present proceeding by filing in the Circuit Court of Cole County his bill in equity wherein he seeks to have the defendants, who compose the State Board of Health, "perpetually enjoined and restrained from the hearing of said purported complaint and from conducting said inquiry, hearing or trial." The grounds upon which the bill predicates the right to such relief are as follows: (1) The complaint is insufficient in law to confer jurisdiction; and (2) the statute under which the defendants are purporting to act is unconstitutional.

A temporary restraining order was granted, but on final hearing it was dissolved and plaintiff's bill dismissed. From such judgment he appeals.

Other pertinent facts will be noted in the course of the opinion.

I. 1. The first point made against the complaint is that it was not verified by the oath of the complainant. The contention is based

upon precedents to the effect that, regardless of statutory require-
ments, proceedings for the disbarment of an attorney
**Complaint.**    at law must be instituted by verified information. Those
precedents are not binding or even persuasive in a case such as
this.  Disbarment proceedings are not governed exclusively by stat-
ute.  Independent of any statute on the subject courts have the in-
herent power to disbar attorneys; and a statute, where there is one,
is not regarded as restrictive, but merely as declaratory of the common
law so far as it goes.   [State v. Gebhardt, 87 Mo. App. 548.]  The
power to revoke the license of one who is thereby authorized to prac-
tice medicine and surgery, on the other hand, does not exist apart
from statute.  In this State the statute (Sec. 7336, R. S. 1919) is
not only the sole source of the power to revoke, but it prescribes and
regulates exclusively the procedure to be followed in the exercise of
the power.  Looking then to the statute we find no requirement that
a proceeding to revoke a license to practice medicine shall be insti-
tuted by the filing of a verified complaint, or by the filing of any
complaint or information whatever.  Evidently it contemplates that
the State Board of Health may act upon any information, from
whatever source and however communicated, which it may deem
trustworthy.  It is only necessary that the written notice provided
for "contain an exact statement of the charges."

2.  It is insisted that the complaint is insufficient in law on the
further ground that its charges, if true, would not authorize the
State Board of Health to revoke appellant's license.  For a more
precise statement of this insistence we quote from plaintiff's bill:
"When he, plaintiff, made his application for examina-
**Charges.**    tion . . . , the law did not require . . . attend-
ance either at a high school or a medical college for any certain
length of time . . . and therefore any statement in his appli-
cation for said license, as to the time of his attendance at a medical
college or a high school, could not have been required by said State
Board of Health of the State of Missouri, and was not necessary in
order to take said examination and to receive said license, and there-
fore could not have in any way been fraudulent as alleged in said
complaint, and therefore said defendants, composing the State Board
of Health of the State of Missouri, have no authority on account of
the statement made in such application to revoke his said license."
The contention must be examined in the light of the governing stat-
ute, the relevant portions of which are as follows:

Section 7332, Revised Statutes 1919 (as amended, Laws 1921, p.
472): ". . . All persons appearing for examination shall make
application, in writing, to the secretary of the said board thirty days
before the meeting.  They shall furnish satisfactory evidence of their

preliminary qualifications, to-wit: A certificate of graduation from an accredited high school or its equivalent or state normal school, college, university or academy. They shall also furnish satisfactory evidence of having received a diploma from some medical college of four years' requirements, including two years' experience in operative and hospital work at time of graduation . . . and shall also furnish evidence of good moral character.''

Section 7336, Revised Statutes 1919: ''The board may refuse to license individuals of bad moral character, or persons guilty of unprofessional or dishonorable conduct, and they may revoke licenses, or other rights to practice, however derived, for like causes, and in cases where the license has been granted upon false and fraudulent statements, upon giving accused an opportunity to be heard in his defense before the board as hereinafter provided. . . .''

As disclosed by Section 7332, an applicant as a pre-requisite to the taking of the examination for a license to practice medicine, must show, at least, that he is a graduate of an accredited high school, or its equivalent. The State Board of Health cannot require more of him with reference to his pre-medical education. The *only evidence* receivable of the fact that he is a *graduate* is a *certificate of graduation*. Other evidence may be received, and no doubt is frequently necessary, to show that the certificate of graduation exhibited by an applicant was issued by an accredited high school, or its equivalent. The length of time that the applicant attended the school issuing the certificate can be of no possible concern to the State Board of Health; provided of course that the certificate is genuine and was granted by a school coming within the class designated by the statute.

The complaint, in addition to charging that appellant did not attend the Purdy High School during the years which he stated in his application he did, alleges that he was not graduated ''under the ordinary and regular procedure, but his record in that school . . . was fraudulent and procured through fraud.'' This language is nebulous; it does not convey any definite or certain meaning. It is entirely conceivable that appellant could in good faith have completed the prescribed course of study of the Purdy High School and by reason thereof have been entitled to receive its certificate of graduation, even though ''the ordinary and regular procedure'' were not followed. If, however, it was intended to charge that appellant was not in fact a graduate of the Purdy High School, or that he exhibited to the State Board of Health a certificate falsely concocted to show that he was such a graduate when in truth he was not, then there should have been plain and direct averments to that effect. The statute requires that, in a proceeding to revoke the license of a physician, he be furnished with ''an *exact* statement of the charges;'' mere inuendoes do not meet that requirement.

In view of the foregoing we are of the opinion that the charges in the complaint, in so far as they relate to matters touching appellant's pre-medical education, afford no warrant for the contemplated hearing before the State Board of Health.

The complaint, however, further charges that appellant in his application made false statements as to his attendance at a medical college. The statute requires as one of the preliminary qualifications for the practice of medicine that the applicant shall have received "a diploma from some medical college of four years' requirements;" and the statements just referred to were evidently made for the purpose of establishing that the diploma exhibited by appellant was that of a school of four years' requirements. The materiality of those statements is therefore apparent. It is argued, however, that attendance at a medical college for any specific length of time is not required; the statute is plainly to the contrary. The movements that have been on foot for several years to raise the standards of attainment of practitioners of both law and medicine and the progress made therein are matters of common knowledge. In the light of that knowledge the meaning of the qualifying phrase, "of four years' requirements," seems to be unmistakable. As is well known, one can by the process of "cramming," or by the aid of a skillful coach, successfully pass an examination upon subjects of which he has no real knowledge. One of unusual endowment may no doubt be able to acquire the theory of medicine in much less time than four years, but that will not suffice to make him a competent practitioner. It requires time for the knowledge derived from text-books and lectures to be organized and appropriated by the student in such fashion that he can make practical application of it. And the statute evidently contemplates that this process shall take place under the guidance and direction of competent instructors. We think there can be no doubt therefore that by the words, "medical college of four years' requirements," the Legislature meant a college which requires its students, as a condition of graduation, to attend its sessions continuously and regularly for and during a full term of four years, barring of course reasonable vacation periods.

Appellant introduced in evidence the written application filed by him for a license to practice medicine. This we have not considered. Whether the charges made against him are, or will be, sustained by the proof is a matter to be determined, in the first instance, by the State Board of Health. Its findings with respect thereto appellant can have reviewed on *certiorari,* if he so elects.

In the trial pending before the State Board of Health the burden is not upon it, or the complainant, to prove that the medical college which granted appellant a diploma, presumably the Kansas City College of Medicine and Surgery, the last one attended, was not a col-

lege of four years' requirements. It was appellant's duty to furnish evidence that it was a college of such requirements at the time he filed his application for a license. If he knowingly furnished false evidence, for the purpose of deceiving the State Board of Health, and which did deceive it, that will be a sufficient ground under the statute for the revocation of his license.

II. It is urged finally that the statute under which the State Board of Health is purporting to act is unconstitutional. It is claimed that it is unconstitutional because of this: after providing for a court review, on *certiorari,* of proceedings had before the Board of Health wherein it revoked a license, it further

**Due Process.** provides: "And any such license so revoked by the board shall, pending said review, on *certiorari,* stand revoked and so remain until the proceedings of the board relating thereto shall be quashed or otherwise annulled by the circuit court on said writ of *certiorari.*" The argument is that the right of a physician to practice his profession is a property right of which he cannot be deprived, by reason of the "due process" provisions of State and Federal Constitutions, except by a *judicial* determination made on notice and hearing. That the State Board of Health is not in any sense a court, that it is not competent to exercise, and does not exercise, judicial power, is unquestionably true. Whether the right referred to is a "property right," or simply a "valuable right," or merely a "privilege," the courts are not agreed. But certainly it is not an unqualified right. It is at all times subject to such restrictions as the Legislature may impose in the exercise of the police power. "No one has a right to practice medicine without having the necessary qualifications and skill." The State has therefore prescribed the minimum qualifications which it regards as essential, and has constituted a board of competent experts to determine in the case of each applicant whether he possesses those qualifications. If they find that he does, they grant him a license. The license so granted confers upon the licensee no right whatever, in the way of a contract with the State. [Reetz v. Michigan, 188 U. S. 505.] It merely furnishes "immunity from punishment because of practice without license." [21 R. C. L. 360.] The statute which confers upon the body of experts the power to grant licenses also invests them with power to revoke them for certain enumerated reasons, among others, that the license was granted on false and fraudulent statements made in the application therefor. The power given to *revoke* licenses is essentially the same as the one given to *grant* them. *Judicial* power is not required in the one instance; it cannot in reason be required in the other.

"By 'due process' we do not always mean a court hearing. 'But neither proceedings according to common law, nor judicial proceed-

ings in a formal court for the trial of actions, are essential to due process.' McGehee's Due Process of Law, p. 52; 6 R. C. L. 459, sec. 454.'' [GRAVES, J., in State v. North, 264 S. W. 681.]

''Legislation must necessarily vary with the different objects upon which it is designed to operate. It is sufficient . . . to say that legislation is not open to the charge of depriving one of his rights without due process of law, if it be general in its operation upon the subjects to which it relates, and is enforceable in the usual modes established in the administration of government with respect to kindred matters; that is, by process or proceedings adapted to the nature of the case.'' [Dent v. West Virginia, 129 U. S. 124.]

The precise constitutional question raised by appellant is so fully considered in an early decision of the Supreme Court of Minnesota, regarded as a leading case, that we cannot do better than quote from it as expressive of our views:

''The sole point made by relator is that this act, in so far as it assumes to give the board power to *revoke* certificates, is unconstitutional. He concedes the right of the Legislature, in the exercise of the general police power of the State, to prescribe such reasonable rules and regulations as to the qualifications of medical practitioners as are calculated to exclude incompetent or dishonest men from the profession, and, to that end, to require every one who desires to practice medicine and surgery to first obtain a license or certificate, and that the Legislature may also vest in a board of examiners, or other administrative or executive body or board, the power to inquire and determine whether applicants possess the prescribed qualifications, and to issue or refuse to issue them certificates in accordance with the result of such examination. Neither does relator deny the power of the Legislature to provide for the revocation of such certificates for cause. Indeed, at this day the power to do these things cannot be seriously questioned—certainly not successfully disputed. [State v. State Medical Examining Board, 32 Minn. 324.]

''The sole ground of relator's objection to this provision of the act, and the only one we will consider, is—*First*, the license to practice medicine, when once granted is property; *second*, that the revocation of this license is the exercise of *judicial* power, which cannot be vested in any executive or administrative board, or even in the Legislature itself, but only in the courts in which, by the Constitution, all judicial power is vested; *third*, and hence to assume to vest this power in this board is to deprive a person of his property 'without due process of law,' which is forbidden by Section 7, Article 1, of the Constitution of the State.

''The radical fallacy in this chain of argument is the assumption that the revocation of such a license is the exercise of judicial power. 'Due process of law,' or 'the law of the land' (which means the same

thing,) is not necessarily judicial proceedings. Private rights and the enjoyment of property may be interfered with by the legislative or executive, as well as the judicial, department of the government. When it is declared that a person shall not be deprived of his property without 'due process of law,' it means such an exercise of the powers of government as the settled maxims of law permit and sanction, under such safeguards as these maxims prescribe for the class of cases to which the one in question belongs. [Cooley, Const. Lim. 356.] This constitutional guaranty, which is as old as Magna Charta, as it is found in this or an equivalent form in every American constitution, is intended to secure the citizen from the arbitrary exercise of the powers of government, unrestrained by the established principles of right and distributive justice. The validity of a statute which interferes with a man's enjoyment of his property is to be tested by those principles of civic constitutional protection which have become established in our system of laws. [Bank of Columbia v. Okely, 4 Wheat. 235; Murray's Lessee v. Hoboken Land Co., 18 How. 272; Davidson v. New Orleans, 96 U. S. 97; Cooley Const. Lim. 355.] . . .

"It has never been held that the granting, or refusing to grant, such a license as this was the exercise of judicial power, and in fact this is not claimed in this case; and there is no possible distinction in this respect between refusing to grant a license and revoking one already granted. Both acts are an exercise of the police power. The power exercised and the object of its exercise is, in each case, identical, viz., to exclude an incompetent or unworthy person from this employment. Therefore the same body which may be vested with the power to grant, or refuse to grant, a license, may also be vested with the power to revoke. The statutes of all the states are full of enactments giving the power to revoke licenses of dealers, innkeepers, hackmen, draymen, pawnbrokers, auctioneers, pilots, engineers, and the like, to the same bodies, boards, or officers who are authorized to issue them, such as city councils, county commissioners, selectmen, boards of health, boards of excise, etc. The constitutionality of such laws, as a valid exercise of the police power, has often been sustained and indeed rarely questioned. [Cooley, Const. Lim. 283 and 597, and cases cited.]

"The only authorities cited by relator to support his contention are cases in which it has been held that the removal of an attorney by a court from his office as an attorney of the court, *like the order of his admission*, is the exercise of judicial power, and is a judgment of the court. But these cases are not at all analogous to the one at bar. They rest expressly upon the ground that attorneys are *officers of the court*, whose duties relate almost exclusively to proceedings of a judicial nature, and that at common law it rested exclusively

with a court to determine who is qualified to become one of its officers, and for what cause he ought to be removed, and hence that attorneys could only be removed from office for misconduct ascertained and declared by judgment of the court. Ex parte Secombe, 19 How. 9; Ex parte Garland, 4 Wall. 333.'' [State v. State Board of Medical Examiners, 34 Minn. 387.]

For other cases announcing the same general doctrine see: Meffert v. Medical Board, 66 Kan. 710; People v. Hasbrouck, 11 Utah, 219; Dent v. West Virginia, supra; State v. Webster, 150 Ind. 607; Freeman v. Board of Medical Examiners, 154 Pac. (Okla.) 56; State Medical Board v. McCrary, 95 Ark. 511; State ex rel. Hurwitz v. North, 70 U. S. (L. Ed.) 406.

Under the holding in State v. State Board of Medical Examiners, supra, which is in accord with that of the authorities generally, our statute empowering the State Board of Health to revoke licenses would not have been void as denying due process of law even if the provisions for review on *certiorari* had been entirely omitted. Such an omission would not have prevented an applicant, or a licentiate, from obtaining relief in the courts, where the board acted oppressively, arbitrarily, or without jurisdiction. [Reetz v. Michigan, supra]

For the reasons herein appearing the judgment of the circuit court is affirmed. All concur, except *Graves, J.,* absent.