**William Cullen BRIDGES, M.D., Appellant,**

**v.**

**STATE BOARD OF REGISTRATION FOR the HEALING ARTS, Respondent.**

No. 32737.

St. Louis Court of Appeals.

Missouri.

July 18, 1967.

Motion for Rehearing or for Transfer to Supreme Court Denied Sept. 12, 1967.

Grant & Howard, St. Louis, for appellant.

Norman H. Anderson, Atty. Gen., Jefferson City, Albert J. Stephan, Jr., St. Louis, for respondent.

DOERNER, Commissioner.

William Cullen Bridges, a physician licensed to practice in this state, was charged by the State Board of Registration for the Healing Arts with performing two unlawful abortions, in violation of Section 334.100, subd. 1(3), RSMo 1959, V.A. M.S. After a hearing the Board unanimously found him guilty of the offenses charged and revoked his license to practice. In accordance with Section 536.100 et seq., of our Administrative Procedure and Review Law, appellant filed his petition for judicial review in the Circuit Court of the City of St. Louis, which affirmed the Board's order. On the supposition that constitutional questions were involved he appealed to the Supreme Court. That court determined that it was without jurisdiction and transferred the cause to this court. Gaddy v. State Board of Registration for Healing Arts, Mo., 394 S.W.2d 284; Bittiker, D.O. v. State Board of Registration for Healing Arts, Mo.App., 404 S.W.2d 402.

■ Appellant's brief contains five "points relied on," one of which has two subdivisions. As respondent notes, the second and third points were not raised in appellant's petition for review, in the hearing before the Circuit Court, or in his motion for a new trial, and a strict enforcement of the rules would require us to hold that they were not properly raised below, T. J. Moss Tie Co. v. State Tax Commission of Missouri, Mo., 345 S.W.2d 191, 193–194, and that they have not been preserved for appeal. Civil Rule 79.03, V.A.M.R.; State v. Keiter, Mo., 394 S.W. 2d 399. The fifth point, that "* * * the competent evidence adduced is substantially insufficient to support the findings

of fact, conclusion of law, and order * * *," without any explanation of *why* it was insufficient, does not conform to Civil Rule 83.05(e); Domijan v. Harp, Mo., 340 S.W.2d 728. However, in view of the nature of the case and the seriousness to appellant of the order revoking his privilege to practice we have concluded, in the exercise of our discretion, to consider all of such points on their merits. It is appropriate to add that the proceedings were instituted and the hearing was held by the Board prior to the date on which our new Administrative Hearing Commission Act, Section 161.252 et seq., Laws 1965, Page 277, S.B. No. 284, became effective and that that Act, "* * * although it may provide desirable additions to agency hearing procedures, it does not void proceedings lawfully conducted prior to its enactment." Rose v. State Board of Registration for Healing Arts, Mo., 397 S.W.2d 570, 576.

On January 9, 1965, the date specified in the notice of hearing, appellant and his counsel, Messrs. Raymond Howard and David M. Grant, appeared before the Board and announced that appellant was appearing specially and only for the purpose of presenting a motion for a continuance. Section 510.120 provides, in part, that "In all civil cases or in criminal cases pending in any court of this state at any time when the general assembly is in session, it shall be a sufficient cause for a continuance if it shall appear to the court, by affidavit, that * * * any attorney * * of such party is a member of either house of the general assembly, and in actual attendance on the session of the same, and that the attendance of such * * * attorney * * * is necessary to a fair and proper trial or other proceeding in such suit * * *." Mr. Howard, a member of the General Assembly, which was then in session, filed his affidavit for a continuance which complied in all respects with Section 510.120, and undisputed evidence was offered which fully supported the affidavit. In all fairness it should be stat-

ed that the evidence showed that Mr. Howard had been employed as co-counsel as early as October 28, 1964, prior to the institution of these proceedings, to defend appellant against related criminal charges growing out of the same alleged abortions. See State of Missouri v. Bridges, Mo., 412 S.W.2d 455. The Board denied the motion for a continuance and its denial furnishes the basis for appellant's initial point on appeal.

In brief, the question presented is whether, despite the restrictive language in Section 510.120 ("all civil cases or in criminal cases pending in any court") it is applicable to a proceeding before an administrative agency. Appellant frankly states that he has been unable to find any authority holding that it is, but he points to the recognized purposes of the statute and argues that it should be so construed since their actions are judicial or quasi-judicial in nature. We readily agree that Section 510.120, " * * * has a dual purpose, that of protecting the business of an attorney or a person engaged in some other business while serving in the Legislature, thereby encouraging good men to sacrifice their time in the interest of good government; and that of protecting a party to a suit whose attorney may be serving in the Legislature. * * * " State v. Myers, Mo., 352 Mo. 735, 179 S.W.2d 72, 75. But while the Board's actions are judicial or quasi-judicial in nature, Article V, Section 22, Const. of 1945, V.A.M.S., we cannot agree that the Board exercises judicial powers or that it is in any sense a court, for the decisions regarding its administrative predecessor have all been to the contrary. Horton v. Clark, 316 Mo. 770, 293 S.W. 362; State ex rel. McAnally v. Goodier, 195 Mo. 551, 93 S.W. 928; State v. Hathaway, 115 Mo. 36, 21 S.W. 1081. Indeed, in the recent case of Gaddy v. State Board of Registration for Healing Arts, Mo., 394 S.W.2d 284, the Supreme Court defined the Board as " * * * an artificial legal entity in the nature of a quasi public corporation * * * " and classified

it with other Boards and commissions which carry on " * * * much of the important work of the executive branch * * * " of our state government.

The language employed in Section 510.120 is clear and unambiguous. By its terms it is applicable only when a civil or criminal case is pending in a court of law. A proceeding of the nature of the one here under consideration is neither a civil nor a criminal case within the meaning of those terms, State of Missouri v. Harold, 364 Mo. 1052, 271 S.W.2d 527; State ex rel. Ball v. State Bd. of Health, 325 Mo. 41, 26 S.W.2d 773; and as the authorities heretofore cited hold, an administrative agency is not a court. Where, as here, the language of a statute is plain and admits of but one meaning there is no room for judicial construction. Foremost Dairies, Inc. v. Thomason, Mo., 384 S.W.2d 651; Rathjen v. Reorganized School District R–11 of Shelby County, 365 Mo. 518, 284 S.W.2d 516; Cummins v. Kansas City Public Service Co., 334 Mo. 672, 66 S.W.2d 920. And under the guise of judicial construction we have no right to change the meaning of a clear and unambiguous statute. Steggall v. Morris, 363 Mo. 1224, 258 S.W.2d 577; McLaurin v. Frisella Moving and Storage Co., Mo.App., 355 S.W.2d 360. It may well be that in view of the salutary purposes of Section 510.120, the great increase in the number of administrative agencies, and the scope of their activities that the statute should be amended to provide for similar continuances of matters pending before such boards and commissions. But such an amendment must be made by the Legislature, not by this court by a construction which in effect would be judicial legislation.

Following the overruling of the motion for a continuance appellant next filed a written motion attacking the jurisdiction of the Board and seeking the dismissal of the charges, or, in the alternative, a continuance pending the disposition of the indictments previously returned against him.

The Board also denied that motion, which ruling appellant likewise assigns as error. The identical question raised under a similar factual situation was decided adversely to appellant's contention in State ex rel. Hurwitz v. North, 304 Mo. 607, 264 S.W. 678, 682, aff. 271 U.S. 40, 46 S.Ct. 384, 70 L.Ed. 818, where it was held:

" * * * As to the oral application for continuance, it should be added that there is no substantial reason for postponing a proceeding like this until after the criminal prosecution is concluded. * * *"

■ Having failed in his efforts to obtain the dismissal of the charges pending before the Board or a continuance of the hearing appellant then orally requested time in which to seek an injunction to restrain the Board from proceeding with the hearing. That request was also denied, and the denial is raised in the "points relied on" portion of appellant's brief but is not developed in the argument portion and might therefore be held to have been abandoned. Terry v. Boss Hotels, Inc., Mo., 376 S.W.2d 239; Holt v. Queen City Loan & Investment, Inc., Mo., 377 S.W.2d 393. We have, however, considered it and find it to be without merit. The Board's refusal to dismiss the charges or continue the hearing pending the disposition of the criminal charges was proper, as was held in State ex rel. Hurwitz v. North, supra. And its ruling in that regard did not furnish appellant with sufficient grounds upon which to obtain an injunction. Hughes v. State Board of Health, 345 Mo. 995, 137 S.W.2d 523.

■ The concluding sentence of subsection 2 of Section 334.100 reads: " * * * Before a license is revoked, there shall be included in the majority of the board voting for the revocation, the vote of at least one board member, if any, who is a graduate of a professional school approved and accredited as reputable by the association which has approved and accredited as reputable the professional school from which the licentiate himself graduated." The appellant now asserts that the order of the Board revoking appellant's license is deficient on its face and void because it fails to include a finding of fact that at least one member of the Board who voted for the revocation is a graduate of a professional school approved and accredited as reputable by the association which approved and accredited as reputable the professional school from which the appellant graduated. Contrary to appellant's claim, the statute does not require the Board to incorporate in its order a formal finding as to the required qualification, if any, of at least one member of the Board. What it does require is that at least one member possessing the qualifications, if such there be, must vote for the revocation before a license may be revoked.

It is apparent from the record that this requirement of the statute was fully satisfied. Section 334.120, concerning the composition of the Board, states that it shall consist of seven members licensed and registered to practice as physicians and surgeons in this state, " * * * five of whom shall be graduates of professional schools approved and accredited as reputable by the American Medical Association and two of whom shall be graduates of professional schools approved and accredited as reputable by the American Osteopathic Association * * *." The appellant is a doctor of medicine but the professional school of which he is a graduate does not appear in the record. The record does show, however, that the hearing was held before five of the seven members of the Board, that of those five, three were doctors of medicine, and that all five who sat voted for the revocation of appellant's license. Since Section 334.120 requires that the members of the Board who are doctors of medicine must be graduates of professional schools approved and accredited as reputable by the American Medical Association these inexorable conclusions must logically follow: If appellant is a graduate of a professional school approved by the American Medical Association the revocation was voted for by three members of the

Board who are graduates of professional schools so approved; and if appellant is not a graduate of a professional school approved by the American Medical Association then the excepting words in the statute, "if any," govern the situation and the voting requirement is not applicable.

■ Section 536.080 of the Administrative Procedure and Review Act, as amended, provides:

"1. In contested cases each party shall be entitled to present oral arguments or written briefs at or after the hearing which shall be heard or read by each official of the agency who renders or joins in rendering the final decision.

"2. In contested cases, each official of an agency who renders or joins in rendering a final decision shall, prior to such final decision, either hear all the evidence, read the full record including all the evidence, or personally consider the portions of the record cited or referred to in the arguments or briefs. The parties to a contested case may by written stipulation or by oral stipulation in the record at a hearing waive compliance with the provisions of this section. As amended Laws 1957, p. 748, § 1 (§ 536.-083)."

While he did not do so in the Circuit Court, appellant now maintains that he was not afforded an opportunity to present an oral argument or a written brief to the members of the Board who joined in rendering its decision and that the order of revocation is therefore voided. In the first place, the record shows that appellant never requested an opportunity to present an oral argument or a written brief. And in the second, the record also shows that appellant waived whatever right he had in that regard. For it shows that after the Board had denied all of his various motions at the inception of the hearing appellant's counsel announced that, " * * * let the record show that we are here, not submitting to the jurisdiction, that we are indifferent to what you

do, that if we stay here, we stay here merely as observers and not as participants in any hearing * * *." Appellant's counsel also stated that, "We do not propose to participate in this hearing" and that "As a matter of fact, we might be viewed as having left, for that matter." The record shows, however, that appellant remained for part of the hearing and Mr. Grant for all of it; that after practically every witness had completed his direct testimony the Chairman of the Board or its counsel inquired of Mr. Grant whether he desired to cross-examine and that each time Mr. Grant replied, "I am not participating" or in words of similar import, that statement being made at least eleven times; that at the conclusion of the testimony the Board's counsel asked Mr. Grant whether he cared to offer anything and Mr. Grant replied in the negative; and that the Chairman then informed Mr. Grant that the Board would take the matter under submission and advise him of its decision, to which Mr. Grant responded "Thank you." If appellant desired to make an oral argument or file a written brief he should have said so when asked whether he cared to offer anything or when informed that the matter would be taken under submission. His responses were, we believe, tantamount to a waiver of record of whatever right he had to do so.

■ Appellant's fifth and final point, as stated, is that on the whole record the competent evidence adduced is substantially insufficient to support the findings of fact, conclusions of law, and the order entered revoking appellant's license. It should be noted that the scope of our review is that provided by Article V, Section 22, Const. of 1945, as implemented by Section 536.140. Our authority is limited to that of determining whether, upon the entire record, the Board reasonably could have made the findings and order under consideration. We may not substitute our own judgment on the evidence for that of the Board; and we may set aside the findings and order of the Board only if they are clearly contrary to the overwhelming weight of the evidence,

when the evidence in its entirety, including all legitimate inferences reasonably deducible therefrom, is viewed in the light most favorable to such findings and order. Gaddy v. State Board of Registration for Healing Arts, Mo.App., 397 S.W.2d 347, 350; Bittiker v. State Board of Registration for Healing Arts, Mo.App., 404 S.W.2d 402, 404.

The evidence introduced before the Board shows that on Saturday, August 1, 1964, Mrs. L_____ D_____ was the mother of two daughters, R_____ and M_____, then aged 13 and 12, respectively. They were in normal health but both were late in their monthly periods. Although a Dr. Hoard was her family doctor and appellant had never before rendered professional treatment to Mrs. D_____ or her daughters, she took them to appellant's office on that day. She told appellant she kind of suspected that the girls might be pregnant and that she wanted to find out. Appellant said he would examine them and the girls were taken to separate examining rooms. Mrs. D_____ did not enter the examining rooms until about 45 minutes or an hour later, at which time both girls were dressing. Appellant told her he had examined the girls and that they would be all right, which she took for granted meant that their periods would start. Appellant also told her to bring the girls back on Monday. The receptionist gave the girls sanitary pads to wear until they got home.

After the visit to appellant both girls were sluggish and sleepy. Neither girl had been having any vaginal discharge prior to the visit to appellant but later that night both started to have such discharges and R_____ started to feel bad. Mrs. D_____ gave her aspirin. On Sunday, R_____ had no appetite and stayed in bed all day. Both girls continued to have vaginal discharges. On Monday R_____ complained of a stomach ache and nausea but didn't vomit. Mrs. D_____ took both girls to appellant's office and advised him of R_____'s complaints. R_____ told her later that appel-

lant gave her some kind of a shot. After examining R_____ appellant told Mrs. D_____ she would be all right and that "* * * it wasn't too much to get upset over." He also told her that if the girls didn't feel up to par to bring them back on Wednesday.

On Tuesday both girls were feeling bad, neither of them ate, and R_____ had had no bowel movement for two days and her chest hurt. Mrs. D_____ took both girls to appellant on Wednesday and advised him of R_____'s complaints. Appellant gave R_____ and M_____ some milk of magnesia, gave R_____ some kind of a shot, and said R_____ had some sort of gas. R_____'s discharge was continuing but M_____'s had stopped by Wednesday. After they returned home both girls began to feel worse and laid down. R_____ began to have some kind of swelling up the middle of her body, which felt hard. Mrs. D_____ gave R_____ another dose of milk of magnesia because appellant had told her to do that if R_____ didn't feel better. R_____ then began to suffer from severe diarrhea and her stool had a "* * * real funny odor, not normal."

On Friday, August 7, 1964, Mrs. D_____ took both girls to the St. Louis County Hospital, where M_____ was treated and released but R_____ stayed. R_____ was operated on about 6:00 P.M., and about 10:30 P.M. the doctor told her that R_____ died. After she returned home M_____ felt worse, came back to the hospital, and was also operated on later. Mrs. D_____ related that on her visits to appellant's office she had made successive payments of $10, $20, and $20, or a total of $50.

M_____ testified that in May or June she had had sexual intercourse with a boy with whom she went to school. She said that on her first visit to appellant he took her to an examining room where she disrobed and got on a table with places in which she put her feet. She was given a shot by the receptionist and went to sleep. When she awoke she was drowsy and could hardly

see. After about five minutes her mother came in and she arose and dressed. She had been late in her period but after seeing appellant she started to have some kind of a discharge, her stomach began to hurt, and she felt sick. On Monday she returned to appellant's office and after partially disrobing and getting on the examining table appellant put an instrument "* * * that looked like a mouth-like thing * * *" up into her. He also had something like scissors with cotton on them which he put inside her private parts. On the Wednesday visit, appellant again put the cotton up there with the scissors and removed it, and gave her some medicine which was first white and, after appellant put something in it, turned pink. She saw R——, who was sick and told her she had also had some of the same medicine with the pink stuff in it. M—— stated that at the time she entered the hospital she had pains in her stomach.

Four doctors connected with the St. Louis County Hospital, and the medical record librarian and a medical technologist of that institution, were also called as witnesses by the respondent. The gist of their testimony was that R—— D—— was admitted to the hospital in the afternoon of August 7, 1964. R—— was in a critically ill state and had the signs characteristic of generalized peritonitis of several days duration. She underwent surgery at 8:00 P.M., following which a cardiac arrest occurred. The surgeon opened the left side of her chest and directly massaged her heart, which revived her, but her heart later stopped again, all efforts to save her failed, and she was pronounced dead at 10:10 P.M. The operation and later the autopsy disclosed superficial tears of the cervical mucosa and a perforation of at least a quarter of an inch in her uterus. Her sigmoid colon had a similar perforation which was so located that the contents of the colon would enter the uterus and the general peritoneal cavity. The perforations in the uterus and the colon were facing each other, and the one of the rectum was slightly higher. It was the opinion of Dr. Cegielski, a surgeon, that the perforations were caused by instrumentation, from inside the uterus out, and then through the anterior wall of the rectum. In the opinion of Dr. Eugene F. Tucker, the perforations had to be caused by a slender, rigid object, at least six inches in length, inserted through the vagina. Dr. Tucker, a pathologist, found placental tissue within the womb which finding would be consistent with no hypothesis other than pregnancy, but no fetus was found. The direct cause of R——'s death was given as peritonitis, secondary to a perforation of her sigmoid colon with subsequent contamination of the peritoneum by the contents of the intestine.

The medical evidence further showed that M—— D—— was admitted to St. Louis County Hospital at 12:34 P.M., August 8, 1964, and found to be suffering from a pelvic abscess, a localized peritonitis. The abscess occupied a space intermediate between the anterior wall of the rectum and the posterior aspect of the uterus. The abscess was drained surgically on August 11, but because of the nature of the operation (an incision through the anterior rectal wall), the uterus was not viewed. However, one of the attending surgeons expressed the opinion that M——'s peritonitis was caused by perforation of the uterus. Serological pregnancy tests were made of M—— on August 10 and on August 13. The first was positive, indicating pregnancy. The second was negative. Dr. Louis A. Bealer gave it as his opinion that a positive finding, followed by the negative, was consistent with the termination of a pregnancy through an abortion performed approximately 10 days prior to the first test, but added that "Ordinarily one might expect a test to be negative a little bit sooner but this is not unusual." M—— recovered and was discharged from the hospital on August 15, 1964.

■ Appellant's attack on the sufficiency of the foregoing evidence is that it is contrary, "* * * to the pattern of

abortion which is well known to judges, attorneys, doctors and lay persons even slightly familiar with such unlawful practice. * * *" in that the words "pregnancy" and "abortion" were not used "* * * by any of the affected parties, * * *" and in that, "* * * There was no price set to perform an abortion * * *." The issue, however, was what was done by appellant, not what words were uttered or what compensation was promised or paid. Considering the evidence as a whole, including all legitimate inferences reasonably deducible therefrom, we are of the opinion that the Board reasonably could find therefrom that appellant performed unlawful abortions upon R―― D―― and M―― D――.

The judgment is affirmed.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court.

Accordingly, judgment affirmed.

ANDERSON, P. J., and RUDDY and WOLFE, JJ., concur.