**Jerry E. DePOORTERE and Leslie F. DePoortere et al., Plaintiffs-Appellants,**

v.

**COMMERCIAL CREDIT CORPORATION et al., Defendants-Respondents.**

**No. 9391.**

Missouri Court of Appeals, Springfield District.

Oct. 15, 1973.

Scott B. Tinsley, J. Douglas Cassity, Miller, Fairman, Sanford, Carr & Lowther, Springfield, for plaintiffs-appellants.

James B. Lowe, Frank Brockus, Kuraner, Dingman, Brockus, Kinton & Lowe, Kansas City, for defendant-respondent Comm. Credit Corp.

**725**

William H. Curtis, Karl F. Schmidt, John W. Cowden, Morrison, Hecker, Curtis, Kuder & Parrish, Kansas City, Glenn A. Burkart, Mann, Walter, Burkart & Weathers, Springfield, for defendant-respondent Universal C. I. T. Corp.

Flavius B. Freeman, Joseph A. Bohrer, Neale, Newman, Bradshaw & Freeman, Springfield, for defendant-respondent Citizens Bank of Springfield.

TITUS, Chief Judge.

The Circuit Court of Greene County sustained defendants' separate motions to dismiss plaintiffs' class-action petition for its failure to state a claim upon which relief could be granted. Rule 55.33, V.A.M.R. More particularly, the court nisi opined that plaintiffs, and those they purported to represent, were not entitled to recover under the Missouri Motor Vehicle Time Sales Law (Ch. 365 RSMo 1969) because it "is inapplicable to new mobile homes having a cash sale price in excess of $7,500." Plaintiffs appealed.

Ere examination of the petition, it seems argute to know some of the definitions and provisions of Chapter 365. The term "motor vehicle," as used in the law, is defined as "any new or used automobile, mobile home, [et cetera] having a cash sale price of *seven thousand five hundred dollars or less* . . . ." (Our emphasis). § 365.-020(5). "Cash sale price" is "the price . . . for which the seller would have sold to the buyer, and the buyer would have bought from the seller, . . ., if the sale had been a sale for cash or at a cash price instead of a retail installment transaction at a time sale price." § 365.-020(1). "Time sale price" is "the total of the cash sale price . . . and the amount, . . ., included for insurance and other benefits . . . and time price differential." § 365.020(15). The definition of "time price differential" is "the amount, however denominated or expressed, as limited by section 365.120, in addition to the principal balance to be paid

by the buyer for the privilege of purchasing the motor vehicle on time to be paid for by the buyer in one or more deferred installments." § 365.020(14). Under § 365.120 "the time price differential included in a retail installment transaction shall not exceed" $7 per $100 per year on "[a]ny [Class 1] new motor vehicle designated . . . by a year model not earlier than the year in which the sale is made," or $10 per $100 per year on "[a]ny [Class 2] new motor vehicle not in Class 1 and any used motor vehicle designated . . . by a year model of the same or not more than two years prior to the year in which the sale is made," or $13 per $100 per year on "[a]ny [Class 3] used motor vehicle not in Class 2 and designated . . . by a year model more than two years prior to the year in which the sale is made." Any person who knowingly violates any provision of the law is guilty of a misdemeanor and subject to the prescribed punishments. § 365.150–1. Also, "Any person violating sections 365.070, 365.080, 365.090, 365.100, 365.110, 365.120, 365.130 or 365.140 shall be barred from recovery of any time price differential, delinquency or collection charge on the [retail installment] contract." § 365.150–2.

According to the diffuse petition (it consumes ten pages of the transcript), plaintiffs and those they champion are retail buyers [§ 365.020(9)] of mobile homes having a cash sale price [§ 365.020(1)] *in excess of* $7,500. It is alleged that all involved purchases were made via retail installment contracts [§ 365.020(10)] "on which a time price differential [§ 365.-020(14)] equal to 10 to 13 per cent interest is unlawfully being collected" by defendants and those of that ilk. Defendants, individually and in their representative capacity, are averred to be sales finance companies [§ 365.020(13)] engaged in the business of purchasing retail installment contracts from one or more retail sellers [§ 365.020(12)] of mobile homes and holders [§ 365.020(3)] of retail installment contracts made in violation of the Missouri Motor Vehicle Time Sales Law. Plaintiffs

prayed that the court "order the named Defendants and each and every member of the Class of Defendants to refund all money collected from Class Plaintiffs attributable to any time price differential, collected illegally as alleged in this Petition, and that this Court order that Class Plaintiffs make payments of the principal balance only during the remaining term of each contract referred to herein." To personify the concerned transaction and plaintiffs' personal involvement, the petition sets forth a 1971 security agreement (substantially in form prescribed by § 365.070)[1] executed by plaintiffs in connection with the retail installment purchase of a new 1971 mobile home; defendant Universal C.I.T. Corporation is said to be the holder of this security agreement which, in part, states:

| | | |
|---|---|---|
| "1. | Cash Price | $ 8706.00 |
| 2. | Cash Downpayment $960 * * * * | |
| 3. | Unpaid Balance of Cash Price (1 Minus 2) | $ 7806.00 |
| 4. | Other Charges * * * * [TOTAL] | $ 1439.82 |
| 5. | Unpaid Balance-Amount Financed (3 + 4) | $ 9245.64 |
| 6. | Finance Charge | $ 6469.56 |
| 7. | Annual Percentage Rate 11.69% | |
| 8. | Total of Payments (5 + 6) | $15715.20 |

Payable: (a) in 119 monthly installments of $130.96 each and one final installment of $130.-96 all payable the like date of each successive month commencing July 3, 1971."

The petition is difficult for ready comprehension. Perhaps this results from plaintiffs' initial assertion "that the cash sale price of the mobile home was over $7,500.00 and therefore did not qualify as a 'motor vehicle' as defined by Section 365.-020(5)," and their apparent ultimate endeavor to use a portion of the alleged inapplicable law (§ 365.150, subd. 2) to bar defendants "from recovering any time price differential." In addition, some portions of the petition suggest an action based on

a complaint that defendants included a time price differential in excess of the percentages allowable by § 365.120. However, when the pleading is sufficiently winnowed and ventilated with plaintiffs' brief and oral argument, the epitome of their postulation lies in the declaration that by enacting Chapter 365 the "legislature has mandated that motor vehicle time sales only be permitted with respect to vehicles having a cash price of $7500.00 or less." In other words, the exact issue presented is whether the General Assembly, by enacting Chapter 365 to regulate time price differential sales of motor vehicles having a cash sale price of $7,500 or less, thereby outlawed and prohibited the making of retail installment contracts evidencing a time price differential sale of motor vehicles having a cash sale price in excess of $7,500.[2]

At least in theory, the consumer intent upon ownership of personal assets proving household services, transportation and recreation has the choice of using cash, an ordinary loan or an installment sales plan. The enviable buyer able to pay cash has no financing problems; those who secure a loan are sheltered by the usury laws; but until the advent of sales finance laws, a purchaser on the installment sales plan under the cash-price-time-price dichotomy had little or no protection. 68 Yale L.J., William D. Warren—Regulation of Finance Charges in Retail Instalment Sales, pp. 839–868; 44 Cornell L.Q., William E. Hogan—A Survey of State Retail Instalment Sales Legislation, pp. 38–73. Much litigation has resulted in Missouri over the sometime distinction between a loan of money governed by the usury statutes and a time price differential sale which does not violate the usury laws. Lucas v. Beco Homes, Inc., 494 S.W.2d 417, 422–423[4]

---

1. Plaintiffs agreed in oral argument that defendants' use of a retail installment contract form similar to the one prescribed by § 365.070 was not sufficient, in and of itself, to bring the transaction within the ambit of Chapter 365. We are informed the form is employed in time price differential sales of motor vehicles which have a cash sale price in excess of $7,500 because the form contains the same disclosures to the buyer as is required

by The Truth in Lending Act (15 U.S.C.A. §§ 1631, 1632, 1636–1639) and Regulation Z. See New Topic Service, Am.Jur.2d, Consumer Credit Protection, § 14 et seq.

2. Time price differential sales of "goods" having a cash sale price of $7,500 or less are regulated by § 408.250 et seq., wherein the term "goods" is defined not to include motor vehicles.

(Mo.App.1973). Nevertheless, the issues involved in Lucas and such cases as Wyatt v. Commercial Credit Corporation, 341 S.W.2d 348 (Mo.App.1960) are only incidentally involved here as plaintiffs have clearly indicated that all transactions which are concerned in their petition were time price differential sales. And while we agree with plaintiffs' conclusions as to the obvious "mischief" the Missouri Motor Vehicle Time Sales Law sought to remedy, it does not logically follow that by undertaking to regulate time price sales of items having a cash sale price of $7,500 or less, the General Assembly thereby utterly prohibited other like transactions involving a cash sale price in excess of $7,500.

■■■ If this opinion was to be cut from the pattern presented by the plaintiffs, it would become necessary to scissor our way through the maze of statutory construction rules in hope of finding what the General Assembly intended by Chapter 365. Collier v. Roth, 468 S.W.2d 57, 59[1] (Mo.App.1971). However, when the language of a statute is unambiguous and conveys a plain and definite meaning, the courts have no business foraging among such rules to look for or impose another meaning. Bridges v. State Board of Reg. for Healing Arts, 419 S.W.2d 278, 281 [5–6] (Mo.App.1967). Without ambiguity, courts should regard laws as meaning what they say; the General Assembly is presumed to have intended exactly what it states directly and unambiguously. State v. Pilkinton, 310 S.W.2d 304, 309–310 [8] (Mo.App.1958). A retail installment contract, as controlled by the provisions of Chapter 365, is unambiguously defined as an agreement evidencing a retail installment transaction involving a motor vehicle having a cash sale price of $7,500 or less. The Missouri Motor Vehicle Time Sales Law does not purport to regulate or make unlawful retail installment contracts pertaining to motor vehicles having a cash sale price of more than $7,500. The proscriptions of the law are clear and unambiguous, and when statutes, as those contained in Chapter 365, enumerate the things or subjects on which they are to operate, they are to be taken as excluding from their effect all subjects and things not expressly mentioned. Giloti v. Hamm-Singer Corp., 396 S.W.2d 711, 713 [1] (Mo.1965). Had the legislature desired or intended to regulate all motor vehicle retail installment sales regardless of the amount of the cash sale price (e. g., Ch. 121½, § 561 et seq., Ill.Rev.St.1967; Art. 5069–7.01 et seq., Vernon's Ann.Rev. Civil Statutes of Texas), or to regulate such sales of motor vehicles having a different cash sale price (e. g., $5,000 or less, § 190.090 et seq., Ky.Rev.St.), or to have wholly prohibited such sales if the cash sale price of the motor vehicle exceeded a stated amount, it would have been a facile matter for it to have done so. Since the General Assembly did not do any of these things and as we are not at liberty to impose prohibitions not included in the plain wording of Chapter 365, the trial court was correct in dismissing plaintiffs' petition and its judgment is affirmed.

STONE and BILLINGS, JJ., concur.

HOGAN, J., not participating.