Honorable J. H. Frappier State Senator, 2nd District 625 Glenco St. Charles, Missouri 63301
Dear Senator Frappier:
This opinion is in response to your question asking:
 "Does Senate Substitute for House Bill 101 of the 1st Regular Session, 79th General Assembly, provide for additional compensation for county clerks as of the effective date of the bill, i.e. January 1, 1978? If the legislation does not provide for additional compensation effective January 1, 1978, what is the effective date of Section 2.023?"
You also state that:
 "Sec. 1.020 provides an effective date of January 1, 1978.
 "Sec. 2.001 designates the county clerk to be the `election authority' in counties without a board of election commissioners.
 "Sec. 2.020 requires that all elections, exceptions noted, shall be conducted by the election authority. The effective date for carrying out the provisions of this section is January 1, 1978.
 "Sec. 2.023 provides additional compensation for the county clerk for carrying out the duties of Sec. 2.020. Compensation is to be paid in equal monthly installments out of the county treasury.
 "Subsection 4. of Sec. 2.023 states, in part, `The total annual amount (of the county clerks additional compensation) shall be determined on or before January 1, 1979 and each year thereafter.
 "Because of the language in subsection 4. of Section 2.023, there is some ambiguity as to the effective date of the election authority's (county clerk) additional compensation."
As you indicate Section 1.020 of SSHB 101 provides:
 "The effective date of this act shall be January 1, 1978. Any amendment made to a provision repealed by this act shall remain in force only until this act becomes effective."
Section 1.020 of SSHB 101 as originally introduced provided that the effective date of the act would be January 1, 1979. The other provisions of that section as introduced remained the same in final passage.
Subsection 1 of Section 2.023 of the act provides:
 "For the performance of additional duties imposed by section 2.020, the county clerk in each county which does not have a board of election commissioners shall receive an annual amount, which shall be equal to the sum of two variable amounts, one based upon the population of the county and the other upon the assessed valuation of the county and shall be payable in equal monthly installments out of the county treasury."
Subsection 2 of Section 2.023 of the act sets out the amounts to be received by such county clerks based upon population, and subsection of Section 2.023 sets out the amount to be received by such county clerks based upon assessed valuation.
Subsection 4 of Section 2.023 provides:
 "The total amount shall be determined on or before January 1, 1979 and each year thereafter. The county population shall be based on the last federal decennial census, and the assessed valuation of the county shall be based on the last available report of the state tax commission."
Our comparison of the above provisions of Section 2.023 in SSHB 101, as truly agreed to and finally passed, indicates that the provisions are identical with the provisions as originally introduced except for the amounts to be paid based upon population and assessed valuation. The amounts to be paid to such clerks were changed during the course of passage.
We will not quote Section 2.020 here because of its length. However, we do point out that such section provides for additional duties to be performed by such clerks. Therefore, the allowance to such clerks of additional compensation for the performance of such duties would not be in violation of Section 13 of ArticleVII of the Missouri Constitution which prohibits an increase in an officer's compensation during his term of office. That is, the only obvious reason for the retention of the date of January 1, 1979, in the truly agreed to and finally passed version of the bill, despite the change in the effective date of the law, would be on the possible basis that such an increase was objectionable under Section 13 of Article VII of the Constitution as an increase in the officer's compensation during the term of office. Since we have ruled out such a constitutional objection as a possible motivation for retaining the January 1, 1979 date and in view of the fact that the express language of Section 2.023 indicates that the legislature viewed such duties as additional duties, we are left with the consideration of the conflict which exists because of the provisions of subsection 1 of Section 2.023 and the provisions of subsection 4 of Section 2.023.
Clearly where the language of a statute is not ambiguous the court will not construe the law and will be guided by what the legislature says and not by what the court may think the legislature meant to say. The Missouri Public Service Co. v.Platte-Clay Elec. Coop., Inc., 407 S.W.2d 883 (Mo 1966); DePoorterev. Commercial Credit Corp., 500 S.W.2d 724 (Mo.Ct.App. at Spr. 1973).
On the other hand when there is an ambiguity in statutory provisions the court will construe such provisions in accordance with the legislative intent. The court in order to give effect to the manifest purpose of the legislature may reject words and figures when necessary. State ex rel. Consolidated School Dist.No. 1 v. Hackmann, 258 S.W. 1011 (Mo. Banc 1924). Thus, the letter of a statute may be enlarged or restrained according to the true intent of the framers of the law. Stack v. General BakingCo., 223 S.W. 89 (Mo. 1920). See V.A.M.S., Construction of Statutes,
§ 1.020 Notes 49-50.
We believe that these provisions read together indicate an ambiguity with respect to legislative intent which permits the application of the principles of construction to determine such intent.
As we have noted, the act as finally passed provided that such county clerks would receive the amounts set out according to population and assessed valuation for the additional duties imposed on them by Section 2.020. The clerks obviously must perform these additional duties after such act becomes effective.
We conclude that it was the legislative intent that such county clerks receive compensation for the additional duties imposed upon them beginning on the effective date of the act, January 1, 1978. It is obvious that the legislature inadvertently neglected to change the date contained in subsection 4 to January 1, 1978, which should have been done in order to be consistent with the change in the effective date of the law. The provisions of subsection 4 should not be taken to indicate a legislative intent contrary to that evidenced by subsection 1 of the same section.
We therefore conclude that commencing upon the effective date of SSHB 101 such county clerks will be entitled to the additional compensation provided by Section 2.023 of that law.
CONCLUSION
It is the opinion of this office that under the provisions of SSHB 101, First Regular Session, 79th General Assembly, effective January 1, 1978, the county clerks in each county not having a board of election commissioners are entitled to receive the additional compensation provided for in Section 2.023 of that act to be determined as of January 1, 1978, and each year thereafter.
The foregoing opinion, which I hereby approve, was prepared by my assistant, John C. Klaffenbach.
Very truly yours,
 JOHN ASHCROFT Attorney General