O 'Bryan v. Allen.

O'BRYAN *et al.* v. ALLEN *et al.*, *Appellants.*

DIVISION ONE.

1. **Evidence:** CHANGE OF LAW MAKING WITNESS INCOMPETENT. Laws which change the rules of evidence relate to the remedy only, and may be applied to existing causes of action, and this is true, although the effect of the change is to render one incompetent as a witness who before was competent.

2, **Land:** FATHER AND SON: PAROL GIFT. The evidence in this case *held* insufficient to support the finding by the trial court of a parol gift of lands from a father to his son.

*Appeal from Cooper Circuit Court.* — HON. E. L. : EDWARDS, Judge.

REVERSED.

*Douglas & Scudder* and *J. R. Walker* for appellants.

(1) Mrs Harriet G. O'Bryan was incompetent as a witness. R. S. 1879, sec. 4010; Sess. Acts, 1887, p. 287;

108 227
113 390
108 227
56a 204
108 227
136 396
70a 506
108 227
141 421
108 227
151 118

*Moore v. Moore,* 51 Mo. 118 ; *Moore v. Wingate,* 53 Mo. 398 ; *Willis v. Gammill,* 67 Mo. 730 ; *Holman v. Bachus,* 73 Mo. 49. ( 2 ) Henry M. Thompson was not a competent witness. R. S. 1879, sec. 4010 ; Sess. Acts, 1887, p. 287 ; *Paul v. Leavitt,* 53 Mo. 595 ; *Haerle v. Kreihn,* 65 Mo. 202 ; *Joice v. Branson,* 73 Mo. 28 ; *Wood v. Broadley,* 76 Mo. 23. ( 3 ) Mrs. Maria G. Allen and Mrs. Clara D. Thompson were not competent witnesses. R. S. 1879, sec. 4010 ; Sess. Acts, 1837, p. 287. ( 4 ) The general reputation in the community as to the ownership of the farm was competent evidence. *Darrett v. Donnelly,* 38 Mo. 492 ; *Benoist v. Darby,* 12 Mo. 196 ; *Dickerson v. Chrisman,* 28 Mo. 134 ; *Railroad v. Clark,* 68 Mo. 371 ; *Wilson v. Albert,* 89 Mo. 537. ( 5 ) To establish a gift, the proof must be so clear, definite, unequivocal and cogent as to leave no room for doubt. *Johnson v. Quarles,* 46 Mo. 423 ; *Forrester v. Scoville,* 51 Mo. 268 ; *Woodford v. Stephens,* 51 Mo. 443 ; *Atkinson v. Henry,* 80 Mo. 151 ; *Jackson v. Wood,* 83 Mo. 76 ; *Philpot v. Penn,* 91 Mo. 38 ; *Adams v. Burns,* 96 Mo. 361 ; *Allen v. Logan,* 96 Mo. 591 ; *Modrell v. Riddle,* 82 Mo. 31 ; *Rogers v. Rogers,* 87 Mo. 257 ; *Moore v. Crawford,* 130 U. S. 122 ; *Berry v. Hartzell,* 91 Mo. 132 ; *Burdett v. May,* 100 Mo. 13. ( 6 ) This is especially true in cases between parent and child. *Jones v. Tyler,* 6 Mich. 364 ; *Ackerman v. Fisher,* 57 Pa. St. 457 ; *Worth v. Worth,* 84 Ill. 442 ; *Ackerman v. Ackerman,* 24 N. J. Eq. 316 ; *Hugus v. Walker,* 12 Pa. St. 173 ; *Poorman v. Kilgore,* 2 Casey, 365 ; *Cox v. Cox,* 2 Casey, 375. ( 7 ) The entire proof in this case consists of admissions and loose declarations of Henry Bell, deceased, which are entitled to but small weight and are to be received with great caution. *Woodford v. Stephens,* 51 Mo. 443 ; *Ringo v. Richardson,* 53 Mo. 385 ; *Kennedy v. Kennedy,* 57 Mo. 73 ; *Cornet v. Bertelsmann,* 61 Mo. 118 ; *Paris v. Haley,* 61 Mo. 453 ; *Melton v. Smith,* 65 Mo. 315 ; *Modrell v. Riddle,* 82 Mo. 31 ; *Berry v. Hartzell,* 91 Mo. 132 ; *Carney v. Carney,* 95 Mo. 353 ; *Hugus v. Walker,* 12

Pa. St. 173; *Dragoo v. Dragoo*, 50 Mich. 573; *Burdett v. May*, 100 Mo. 13. (8) The evidence in this case is not sufficient to support the decree. *Adams v. Burns*, 96 Mo. 361; *Dragoo v. Dragoo*, 50 Mich. 573; *Wright v. Wright*, 31 Mich. 380; *Forward v. Armstead*, 12 Ala. 124; *Eckert v. Mace*, 3 Pa. 364; *Eason v. Eason*, 61 Tex. 225; Waterman on Spec. Perf., sec. 285; *Shell-hammer v. Ashbaugh*, 83 Pa. St. 24; *Veth v. Gierth*, 92 Mo. 97; *Isaacs v. Skrainka*, 95 Mo. 517.

*John Cosgrove* and *J. H. Johnston* for respondents.

(1) Mrs. O'Bryan, the plaintiff, was a competent witness. *O'Bryan v. Allen*, 95 Mo. 68. She was not rendered incompetent by Revised Statutes, 1889, section 8918. (2) A statute which takes away or impairs any vested right acquired under existing laws, or creates a new obligation, or imposes a new duty, or attaches a new disability in respect to transactions or considerations already past, is to be deemed retrospective or retroactive. Sedgwick, Stat. & Const. Law, 188; *Ins. Co. v. Flynn*, 38 Mo. 483; *Barton Co. v. Walser*, 47 Mo. 200; *St. Louis to use v. Clemens*, 52 Mo. 144. (3) The widow in a suit for assignment of dower is not held to strict proof of her husband's title. It is only necessary that her case be made out with reasonable certainty; any other degree of certainty in a case of this kind is unattainable. *Gentry v. Woodson*, 16 Mo. 224; Scribner on Dower, p. 237; 2 Scrib., p. 199; *Neale v. Neale*, 9 Wall. (U. S.) 1. (4) The evidence in this case clearly proves all the allegations of plaintiff's petition, and the court below was fully warranted in rendering the judgment it did. *Peters v. Jones*, 35 Iowa, 512; *Burkholder v. Ludlam*, 30 Gratt. (Va.) 255; *Hardesty v. Richardson*, 44 Md. 617; *Langston v. Bates*, 84 Ill. 524; *Story v. Black*, 5 Montana, 26; *Anderson v. Shockley*, 82 Mo. 250; *West v. Bundy*, 78 Mo. 407; *Halsa v. Halsa*, 8 Mo. 303.

BRACE, J.—The plaintiffs are the widow of Noah D. Bell, deceased, and her present husband. Noah D. Bell, deceased, was a son of Henry Bell, deceased. The defendants, Maria G. Allen, Clara D. Thompson and Henry Bell, are the children of the plaintiff Harriet, and her former husband, Noah D. Bell. Defendant, D. D. Bell, is a son of Henry Bell, deceased. Ernest Bell and Clara Bell Tracy are the children of Dan Bell, deceased, who was a son of Henry Bell, deceased.

The action is in the nature of a bill in equity to declare that the said Noah D. Bell died seized in equity of an inheritable estate in a tract of land in Cooper county, containing about two hundred and twenty-three acres, in which the said Harriet is entitled to dower, and for its assignment, upon the ground that the said Henry Bell, in his lifetime, made a parol gift of said land to his said son, Noah D., but died seized in fee simple of the legal estate therein, without conveying the same to the said Noah D. The defendants, D. D. Bell, Ernest Bell and Clara Bell Tracy, answered, denying all the material allegations of the petition, and setting up the statute of frauds. The other defendants made no answer. The issues of fact were submitted to a jury, who found for the plaintiffs, and the court decreed in accordance with the prayer of the petition. Commissioners were appointed and dower assigned plaintiff in the land also as prayed for, and the defendants who joined issue appeal.

I. On the trial before the jury the plaintiff, Mrs. O'Bryan, and her two children, the defendants, Mrs. Allen and Mrs. Thompson, as also Mr. Thompson, her husband, were introduced, and, over the objections of the defendant ( to their competency as witnesses ), were permitted to testify, and this is complained of as error.

When this case was here before ( *O'Bryan v. Allen*, 95 Mo. 68) the same point was made and passed upon as to the competency of Mrs. O'Bryan. We then held

that she was a competent witness under section 4010, Revised Statutes of 1879, on the ground that "she was not one of the original parties to the contract or cause of action on trial." Since that decision was made, and before the trial of this case in the court below, from which this appeal is taken, said section was amended so that the first proviso thereof then and now reads : "That in actions where one of the original parties to the contract or cause of action in issue and on trial is dead, or is shown to the court to be insane, the other party *to such contract or cause of action* shall not be admitted to testify *either* in his own favor *or in favor of any party to the action claiming under him, and no party to such suit or proceeding whose right of action or defense is derived to him from one who is, or, if living, would be, subject to the foregoing disqualification, shall be admitted to testify in his own favor, except as in this section is provided.*"     *   *   *     Sess. Acts, 1887, p. 287 ; R. S. 1889, sec. 8918.

The amendment consisted in inserting in the original section the words in italics. There can be no question under this amendment that the witnesses objected to were disqualified to testify upon the issues on this trial at the time they were called, and the court committed error in permitting them to testify. It is urged, in support of the ruling of the court, that at the time this amendment was passed, this cause was pending ; that there had then been one trial in the case, in which the plaintiff had the benefit of the evidence of some of these witnesses, they being, under the law as it then stood, competent witnesses ; and that the plaintiff, therefore, had some vested right in their evidence, which is entitled to the protection of the constitutional provision prohibiting the passage of a law "impairing the obligation of the contracts or retrospective in its operation."

It is not seen how this contention can be maintained. Laws which change the rules of evidence relate

to the remedy only, may be applied to existing causes of action, and are not precluded from such application by the constitutional provision. Cooley on Con. Lim. [3 Ed.] p. 288. The learned author in another connection thus states the doctrine upon this subject: "A right to have one's controversies determined by existing rules of evidence is not a vested right. These rules pertain to the remedies which the state provides for its citizens; and, generally, in legal contemplation they neither enter into and constitute a part of any contract, nor can be regarded as being of the essence of any right which a party may seek to enforce. Like other rules affecting the remedy, they must, therefore, at all times be subject to modification and control by the legislature; and the changes which are enacted may lawfully be made applicable to existing causes of action even in those states in which retrospective laws are forbidden; for the law as changed would only prescribe rules for presenting the evidence in legal controversies in the future, and it could not, therefore, be called retrospective even though some of the controversies upon which it may act were in progress before." Cooley, Con. Lim., p. 367; *State v. Grant*, 79 Mo. 113.

The trend of modern legislation has been until recently in the direction of enlarging the class of competent witnesses, and the rulings in most of the cases have been upon legislation making those competent who before were incompetent to testify, but the principle is the same in the one as in the other case. By such changes in the law, as in all general legislation, hardship is sometimes worked in individual cases. But, in this particular case, there need be no such complaint, for all the substantial facts necessary to an enlightened judgment by the chancellor appear in the evidence of other witnesses. Briefly stated, they are as follows:

II. Henry Bell was a prosperous and wealthy merchant, residing in Lexington, Kentucky; he had three sons, Noah, Daniel and D. D., for all of whom

O'Bryan v. Allen.

he seems to have entertained a warm parental affection. Noah, who was living with his father at the time (in 1857), married an estimable Tennessee lady, the plaintiff in this case, and soon thereafter his father set him up in business in Keokuk, Iowa.   He conducted the business for a short time and failed, his father paying his debts.   He returned to Lexington, remained there a short time, and went thence to St. Louis where he remained until the war broke out, when he went south with his family, and continued there living in Mississippi and Arkansas, until the year 1868.   The character of Noah Bell is portrayed in the evidence in features about which there can be no mistake ; he was a good-hearted fellow, whom his father, his family and his friends loved truly, but improvident, and of "irregular habits."   As a consequence, his father felt called upon and did continually contribute to the support of himself and family, as their necessities required, from the time of his marriage to the day of his death.

In 1868, seeing that he was not getting on in the world, or likely to, his father determined to charge himself more definitely and directly with the future support and welfare of his son and his family than he had hitherto done, and, in pursuance thereof, bought the premises in question, furnished it with everything necessary to make a pleasant home for a country gentleman, and thereafter made him an allowance of $3,000 per annum to live on it, as such.   This allowance he continued to him until Noah's death in 1877, and to Noah's family until his own death in 1883, besides making them presents of other large sums of money as to him seemed agreeable or necessary, and buying a lot and erecting a house on it in the city of Boonville for a residence for his widow at a cost of $8,000 or $9,000, not completed until after his death.

During the nine years that Noah resided on the premises, some necessary repairs and improvements were made on the place out of money furnished by

his father amounting to an insignificant sum when compared either with the rental value of the property or his allowance. During the whole period he and his family lived in perfect accord and harmony with his father, governing themselves in accordance with his wishes in every respect in regard to the premises, and there is not in the evidence a suggestion that the thought ever entered Noah's mind, that he was holding possession of this property adversely to his father's title, while in every line is disclosed the father's intention that that title should remain in himself, and that no alienable or inheritable estate should ever vest in his son. He proposed to take care of this beloved, but somewhat wayward, son and his family, in his own way, as he had a right, and knew precisely how, to do, and he did take care of them while he lived, and made ample provision for them after his death. It is not within the power or province of a court of equity, out of his bounty to his son given *ex gratia*, to construct an obligation *ex debito justicia* against the father in the son's favor, and then enforce it, as we are asked to do in this case, with no better foundation to sustain it than the acceptance of that bounty by the son, in moving on the premises from a neighboring state, living on it, and spending a trifle of that same bounty in making and keeping the property in repair and comfortable for the enjoyment of himself and his family.

Henry Bell made a fairly equitable division of his estate. By his will he gave to the widow and children of his deceased son, Noah, $90,000 in seven-per-cent. bonds; $25,000 to each of the children, and $15,000 to the widow, to whom he also gave the city lot in Boonville; the devise to the widow was as long as she lived, and remained the widow of his son; and upon her death or marriage the bonds given her went in equal portions to the three children, and the lot to her son Henry. She married again; *hinc illac lachrymæ.*

The bill should have been dismissed at the hearing on the evidence. The judgment is reversed. In the first paragraph, SHERWOOD, C. J., and BLACK, J., concur. In the second and in the result all concur.