Timothy J. McCARTHY, Plaintiff-
Appellant,

v.

BOARD OF TRUSTEES OF the FIRE-
MEN'S RETIREMENT SYSTEM OF
ST. LOUIS, Defendant-Respondent.

No. 33733.

St. Louis Court of Appeals,
Missouri.

Dec. 22, 1970.

Rehearing Denied Jan. 25, 1971.

Henderson, Heagney & Snyder by Robert O. Snyder, St. Louis, for plaintiff-appellant.

Robert W. VanDillen, City Counselor, Aubrey B. Hamilton, Associate City Counselor, St. Louis, for defendant-respondent.

CLEMENS, Commissioner.

Plaintiff Timothy J. McCarthy, a disabled 30-year veteran of the St. Louis Fire Department, was retired and awarded an annual $2,889 pension for ordinary disability. This was awarded on the ground Mr. McCarthy was suffering from a disabling heart disease. He is now contending for an additional annual pension of $2,083 on the ground his disability was service connected. Section 87.205 [1]. The Board of Trustees of the Firemen's Retirement System of St. Louis (the Board) denied this claim and Mr. McCarthy applied for a review by the Circuit Court. The Circuit Court affirmed the Board's decision and plaintiff now appeals to our court.

Mr. McCarthy filed two successive claims for service-connected disability. On June 19, 1967 he claimed his disabling heart disease was caused specifically by an accidental fall while he was fighting a fire in May of 1965. Before the first claim was decided, Mr. McCarthy filed a more general claim

[1]. All section numbers refer to RSMo 1969, V.A.M.S.

on December 4, 1967 in which he claimed his heart condition was suffered in the line of duty. The Board held formal hearings and denied both claims. We first consider the accidental injury claim.

While fighting a fire May 24, 1965 Mr. McCarthy fell and struck his back on the corner of a stack of shingles. He was given emergency hospital treatment and was off work for a month, complaining of soreness in his back and rib, a burning sensation in his lungs and a shortness of breath. The discomfort persisted but he continued to do a fireman's normally heavy work and was frequently exposed to smoke, as often as twice a week.

In April of 1967, almost two years after his accidental fall, Mr. McCarthy went to his physician, Dr. Cyril Costello, complaining of his persisting discomfort. At that time he was grossly overweight, being five feet nine inches tall and weighing 245 pounds. Examination showed an enlarged heart and cardiovascular disease for which Dr. Costello prescribed conservative treatment.

■ The link between the accidental fall and the heart disease is tenuous. Testifying to the cause of Mr. McCarthy's heart disease Dr. Costello first attributed it to "carrying too big a load of fat, and doing the type of work which put rather sudden aggravations on that overload." Dr. Costello said it was difficult to tie a heart condition to specific events, but Mr. McCarthy's fall, combined with his work as a fireman, could have been a precipitating factor in his heart condition. Pressed further, Dr. Costello opined that both Mr. McCarthy's fall and his work were connected with his heart condition.

Evidence adduced in opposition was documentary. It included written reports of the three physicians composing the Board's medical board (§ 87.160, subd. 2), Drs. George B. Rader, John D. Davidson and Marshall B. Conrad. Each had separately examined Mr. McCarthy on June 27, 1967 and each found he had a disabling heart disease and spinal osteoarthritis. Drs. Rader and Davidson reported they were unable to relate Mr. McCarthy's heart condition to his accidental fall; neither could Dr. Conrad, but he acknowledged the possibility the fall had aggravated Mr. McCarthy's arthritis and heart disease.

Thus, the record does show substantial evidence to support the Board's finding that Mr. McCarthy's disability did not arise from the accidental injury. Even Dr. Costello's testimony did not clearly relate Mr. McCarthy's disability to his accidental injury. After acknowledging only the possibility of such causation, he said merely that the injury and his work were "connected" with his heart condition. Contrasting that evidence with the no-causation testimony of the medical board doctors, and giving consideration to the Board as the original fact finders (§ 536.140), we find the evidence warranted the Board's denial of Mr. McCarthy's claim of disability caused by the accidental injury.

■ Mr. McCarthy challenges the competency of the medical board's evidence. He contends the Board erred in admitting into evidence, over his objection, the written reports of the medical board doctors. He says the reports were hearsay and he was prejudiced by inability to cross examine the doctors. We think not.

The medical board is required by § 87.160, subd. 2, to conduct physical examinations of disability applicants and "shall report in writing to the board of trustees its conclusions and recommendations upon all matters referred to it." A Board finding that a fireman is disabled is conditioned upon having reports from the medical board. § 87.200. And, in Edwards v. Firemen's Retirement System of St. Louis, Mo. App., 410 S.W.2d 560 [5], we held these reports were invulnerable to hearsay objections, saying: "The reports of the medical examiners are records required by law to be made to the Board and so constitute public records; as such they are competent evidence to establish such facts as the law

requires to be kept." None of the hearsay cases cited by appellant refutes this firm ruling that these reports are admissible.

■ Nor are we persuaded that prejudice arose from the lack of cross examination. The medical board's reports were public records long before the Board hearing. The three doctors were subject to subpoena as witnesses before the Board or by deposition. Mr. McCarthy's counsel did not avail himself of this opportunity to cross examine and cannot now claim prejudice.

We affirm the denial of Mr. McCarthy's claim based on disability arising from accidental injury and take up his later claim that his disabling heart condition was suffered in the line of duty.

Mr. McCarthy makes alternate contentions to support this line-of-duty claim. First, he contends his heart disease was aggravated by his work as a fireman; second, he relies on a statutory presumption of causation, § 87.005. These in turn.

■ On his claim of aggravation Mr. McCarthy relies on § 87.200. Before its amendment by Laws of 1967, P. 876, § 1, this section granted service-connected disability benefits to a fireman who became disabled as the natural and proximate result of an accident at a definite time and place. As amended, the section goes beyond coverage for accidental injury and now also allows benefits for disability which is the natural and proximate result of "exposure while in the actual performance of duty in response to an emergency call." The key words are "exposure" and "emergency call."

At best, Mr. McCarthy's evidence showed that his normal work as a fireman tended over a period of years to aggravate his heart disease. Accepting this arguendo as "exposure," Dr. Costello's testimony, recited above, showed that the aggravation was general; nothing shows it was incurred "in response to an emergency call."

Nothing in § 87.200 covers Mr. McCarthy's long-term, deteriorating physical condition.

We look now to the more difficult problem posed by the statutory presumption of causation, § 87.005. The statute, enacted after Mr. McCarthy had become disabled, says that a successfully passed physical examination warrants an inference that heart disease incurred thereafter was suffered in the line of duty. The first question is whether this statute can be applied retroactively, as Mr. McCarthy contends, or only prospectively, as the Board contends. The statute, with our emphasis added, says: "Notwithstanding the provisions of any law to the contrary, after five years service, any condition of impairment of health caused by any disease of the lungs or respiratory tract, hypertension, or *disease of the heart* resulting in total or partial disability or death to a uniformed member of a paid fire department, who *successfully passed a physical examination* within five years prior to the time a claim is made for such disability or death, which examination failed to reveal any evidence of such condition, shall be *presumed to have been suffered in line of duty*, unless the contrary be shown by competent evidence." (As will be seen, Mr. McCarthy contends he successfully passed a physical examination November 8, 1965). This statute became effective October 13, 1967, after Mr. McCarthy had become disabled, but before he made his second claim for benefits based on the statutory presumption.

■ The Board first contends § 87.005 cannot be applied retroactively, saying it creates a right of recovery nonexistent at the time of its passage. Not so. The statute does not create a new right of recovery; it prescribes a rule of evidence, saying that one fact establishes a rebuttable presumption of another fact, that is, that successfully passing a physical examination within a certain time is prima facie evidence that subsequent heart disease was suffered in the line of duty. Since the statutory presumption is conditional rather than con-

clusive it creates only a procedural right, not a substantive right. Such a procedural statute may be applied retroactively to cases pending at the time the statute became effective. State ex rel. Clay Equipment Corporation v. Jensen, Mo., 363 S.W. 2d 666 [2]. This is particularly true of the statutory rules of evidence. O'Bryan v. Allen, 108 Mo. 227, 18 S.W. 892, 1. c. 893. The Legislature has the general power to make an evidentiary rule that a proven fact warrants an inference of another fact and such a rule of evidence may be applied retroactively. City of St. Louis v. Cook, 359 Mo. 270, 221 S.W.2d 468 [2, 3]; State v. Buck, 120 Mo. 479, 25 S.W. 573, 1. c. 576.

■ Accepting this retroactive application of § 87.005 arguendo the Board challenges the statute on another ground. The legislative power to enact rules of presumptive evidence is not absolute. It is subject to the qualification that in statutes creating an evidentiary presumption there must be a rational connection between the fact proved and the ultimate fact to be established. City of St. Louis v. Cook, supra, 221 S.W. 2d 1. c. 470. And see annotation Making One Fact Evidence of Another, 162 A.L.R. 505, citing Kellog v. Murphy, 349 Mo. 1165, 164 S.W.2d 285 [11–14], where the legislative power was stated in the negative, condemning rules of evidentiary presumption that are "lacking in logical connection between the initial and imputed facts." Whether § 87.005 lacks such a rational connection leads us to the ultimate issue, the meaning of "successfully passed a physical examination."

Can we say here that there is a rational connection between the proven fact that a physical examination revealed no heart disease and the presumptive fact that heart disease incurred thereafter was suffered in the line of duty? We cannot gauge this rational connection without also considering the nature of the physical examination. Certainly not every physical examination regardless of scope and quality would suffice because then there would be no rational connection.

The statutory inference is logical only if the physical examination made and passed would, with reasonable medical certainty, show the absence of heart disease. Since the legislative power to declare evidentiary presumptions is limited to rational presumptions, we interpret § 87.005, as applied to this case, to mean that the physical examination referred to was one which would, with reasonable medical certainty, show the absence of heart disease. Otherwise, § 87.005 would exceed the legislative power to declare evidentiary presumptions.

■ Furthermore, the words "physical examination" in § 87.005 are not to be interpreted out of context but in relation to the statute as a whole. State ex rel. Wright v. Carter, Mo., 319 S.W.2d 596 [7]. And, as said in Rutter v. Carothers, 223 Mo. 631, 122 S.W. 1056, at 1. c. 1059: " * * * the practical administration of the law through the courts would quite miss refined and elevated justice in many instances if the naked and cold words of the statute were not warmed into life and good sense by seeking, finding, and reading into the law its true spirit and intendment." In interpreting a statute we must presume that the legislature intended a logical and reasonable result. Igoe v. Slaton Block Co., Mo.App., 329 S.W.2d 39 [6]; Globe-Democrat Pub. Co. v. Industrial Commission, Mo.App., 301 S.W.2d 846 [3–5].

The "physical examination" prescribed in § 87.005 is clearly related to the absence of heart disease. We must assume that in using those words the legislature did not mean any physical examination for that would produce an illogical result; instead we interpret the words "physical examination" as applied to this case to mean one that did, with reasonable medical certainty, reveal the absence of heart disease.

We examine the evidence to determine whether Dr. Costello's November 8, 1965 examination of Mr. McCarthy met this standard.

Dr. Costello, a surgeon, first saw Mr. McCarthy at his office on that date. He

complained of lumps in his abdominal wall, nothing else. Dr. Costello gave him the kind of examination usual for most new patients—what the doctor termed a complete history and physical examination. In this office examination the doctor examined Mr. McCarthy's pulse, heart, lungs and blood pressure; he said all were normal. Dr. Costello referred Mr. McCarthy to St. John's Mercy Hospital for surgical removal of abdominal tumors. At Dr. Costello's direction a pre-surgical examination was made there November 17, just nine days after the office examination. Results of the x-ray and EKG examinations reported to Dr. Costello showed Mr. McCarthy had a heart sized "at the upper limits of normal" and "a complete right bundle branch block," a serious heart disease of unknown and unknowable duration.

Mr. McCarthy relies on the November 8 office examination to show he "successfully passed a physical examination." The limited scope of that examination appears in several ways. At that time Mr. McCarthy was not complaining of symptoms indicative of heart disease. Although Dr. Costello said he gave Mr. McCarthy a complete physical examination, that examination was directed toward surgical removal of tumors, not the presence or absence of heart disease. Had Dr. Costello's office examination been "complete" there would have been little need for him to have directed the further x-ray and EKG examinations at the hospital. Dr. Costello then knew at the hospital the x-rays would be examined by a radiologist and the EKG by a cardiologist. The incompleteness of Dr. Costello's initial office examination is further demonstrated. He acknowledged that if he were examining a patient who had come to him about a heart problem, then for the purpose of determining the heart condition he would require x-ray and EKG examinations. Dr. Costello did just this a year and a half after Mr. McCarthy's initial examination. In April of 1967 Mr. McCarthy came to him complaining of chest pains and shortness of breath. Dr. Costello then added x-rays and EKG to his examination process to aid in diagnosing Mr. McCarthy's heart condition.

■ We conclude that Dr. Costello's office examination of Mr. McCarthy on November 8, 1965 was not such an examination as is contemplated by § 87.005, that is, a physical examination which would, with reasonable medical certainty show the absence of heart disease. Therefore Mr. McCarthy did not successfully pass such a physical examination as is necessarily contemplated by § 87.005. It follows that he is not entitled to the statutory presumption that his heart disease was suffered thereafter in the line of duty.

In summary, the Board's denial of Mr. McCarthy's claim to service-connected disability was proper since 1) the evidence warranted the Board's finding that his disability was not caused by the accidental injury of May 24, 1965; 2) Mr. McCarthy did not show his disability was caused by aggravation of his heart condition by exposure while in actual performance of duty in response to an emergency call and 3) he did not show he successfully passed a physical examination on November 8, 1965.

Judgment affirmed.

PER CURIAM:

The foregoing opinion of CLEMENS, C., is adopted as the opinion of this court. Accordingly, the judgment is affirmed.

WOLFE, P. J., and BRADY and DOWD, JJ., concur.