STATE ex rel. Paul W. COLLINS, Director, Missouri Division of Highway Safety, and Dr. Byron I. Axtell, D.O., Coroner, Mercer County, Missouri, Relators,

v.

The Honorable J. Morgan DONELSON, Judge of the Circuit Court of Mercer County, Missouri, Respondent.

No. 29237.

Missouri Court of Appeals, Kansas City District.

Oct. 11, 1977.

John D. Ashcroft, Atty. Gen., Sheila K. Hyatt, Asst. Atty. Gen., Jefferson City, for relators.

Slagle & Bernard, Ben R. Swank, Jr., Kansas City, for amici curiae.

Phil Hauck, Erwin L. Milne, Stockard, Andereck, Hauck, Sharp & Evans, Trenton, for respondent.

## ORIGINAL PROCEEDING IN PROHIBITION

Before PRITCHARD, C. J., and SHANGLER, DIXON, SWOFFORD, WASSERSTROM, SOMERVILLE and TURNAGE, JJ.

TURNAGE, Judge.

This original proceeding in prohibition was brought by the Director of the Missouri Division of Highway Safety and the Coroner of Mercer County. The object of the writ is to restrain the respondent judge from enforcing his order compelling the relators to comply with a subpoena duces tecum to produce a report made by the Coroner to the Director as required by § 58.445, RSMo 1977 Supp.

This court issued its preliminary rule in prohibition. Relators contend the rule should be made permanent because § 58.-449, RSMo 1977 Supp. prohibits the results of the test made by the Coroner from being used except for statistical purposes. Preliminary rule made permanent.

The underlying case, which brought about the issuance of a subpoena duces tecum, involves a claim against Old American Insurance Company on a policy of insurance issued on the life of Robert L. Girdner. Girdner died within four hours after being involved in an automobile accident and the Coroner of Mercer County performed the blood test required by § 58.-445. Results of this test, along with the required report, were sent to the Director of the Missouri Division of Highway Safety.

Both the plaintiff and the defendant in the underlying case sought the results of

the test made on Girdner and to that end issued a subpoena duces tecum to the Director and Coroner. When these two officials appeared for their deposition, they both stated they had in their possession a copy of the report together with the results of the test made by the Coroner on Girdner. However, both refused to divulge the results of the test because of the provision of § 58.449.

A motion was filed with the respondent judge to compel compliance with the subpoena duces tecum and the judge ordered both officials to comply with the subpoena and to produce the results of the test and the report made to the Director. The filing of this proceeding in prohibition followed.

Section 58.445 provides:

1. If any driver or pedestrian within his jurisdiction dies within four hours of and as a result of an accident involving a motor vehicle, the coroner shall report the death and circumstances of the accident to the Missouri division of highway safety in writing. The report shall be made within five days of the conclusion of the tests required in sub-section 2.

2. The coroner shall make or cause to be made such tests as are necessary to determine the presence and percentage concentration of alcohol, and drugs if feasible, in the blood of the driver or pedestrian. The results of these tests shall be included in the coroner's report to the division.

Section 58.449 provides:

The contents of the report and results of any test made pursuant to the requirements or authorizations of sections 58.445 to 58.449 shall be used only for statistical purposes which do not reveal the identity of the deceased.

■ Prohibition is the proper remedy when a trial court has ordered discovery and the order exceeds the jurisdiction of the court *State ex rel. Thomasville Wood Products, Inc. v. Buford,* 512 S.W.2d 220, 221[1–5] (Mo.App.1974). Thus, if the order by the respondent judge compelling the officials here involved to produce the results of the test made pursuant to § 58.445 is in violation of § 58.449, then the preliminary rule in prohibition should be made permanent because such would be in excess of his jurisdiction.

The relators contend § 58.449 is clear and unambiguous and by its plain terms prevents such officials from disclosing the result of the test to anyone. Relators point to the language "shall be used only for statistical purposes" and argue that such phrase manifests a clear legislative intent the test result shall not be used in any other manner.[1]

The respondent and Amici Automobile Club of Missouri and General American Life Insurance Company contend the statute, if construed according to relators' view, would thwart discovery and prevent vital relevant evidence from being made availa-

---

1. Other states have enacted similar statutes: (1) Illinois, Minnesota and New York specifically provide test results shall not be admissible in evidence in any civil or criminal action. Ill. Stats.Ann. ch. 31, § 10; Minn.Stats.Ann. § 169.-09 (1977 Supp.); N.Y.Consol.Laws ch. 11, County Law § 674, subd. 3[b] (1972). Idaho provides "The results of such tests shall be used exclusively for statistical purposes and the sample shall never be identified with the name of the deceased. Any person releasing or making public such information other than as herein prescribed, shall be guilty of a misdemeanor." Idaho Code § 49–1016 (1977 Supp.). New Mexico provides the report shall not be subject to judicial process. N.Mex.Stats.Ann. § 15–43–45B (1953). (2) Nev.Rev.Stats. § 484.-394 (1973) makes the findings of examinations a matter of public record. Colo.Rev.Stats.

§ 42–4–1211 (1973) provides the records of results of the tests shall not be public information, "but shall be disclosed on request to any interested party in any civil or criminal action arising out of the collision." North Dakota provides the results shall be released upon the issuance of a subpoena duces tecum by a court of competent jurisdiction in any civil or criminal action. N.Dak. Century Code Ann. § 39–20–13 (1975 Supp.). (3) Connecticut, Massachusetts and Pennsylvania statutes neither restrict nor make public the test results. Conn. Rev.Stats. § 14–227c (1977 Supp.); Mass.Rev. Stats. ch. 38, § 6A (1972); Pa.Consol.Stats. Ann. Title 75, § 3749 (1977 Supp.). The precise question here presented has not been decided in any state where the result was not plainly dictated by the statute.

ble in the underlying suit.[2] No question is raised concerning the power of the legislature to restrict the use of the test results.

■ A well settled rule of statutory construction states: "When the language of a statute is unambiguous and conveys a plain and definite meaning, the courts have no business to look· for or to impose another meaning. *DePoortere v. Commercial Credit Corporation,* 500 S.W.2d 724, 727[1] (Mo. App.1973). If a statute is unambiguous, a court should regard it as meaning what it says since the legislature is presumed to have intended exactly what it states directly. *DePoortere v. Commercial Credit Corporation, supra* at 727[2]. *Pedroli v. Missouri Pacific Railroad,* 524 S.W.2d 882, 884[1, 2] (Mo.App.1975).

■ It is readily apparent the language of the statute involved here is written in plain and simple English. The Coroner is required to make such test as necessary to determine the presence and percentage concentration of alcohol, and drugs, if feasible, in the blood of a driver or pedestrian who dies within four hours after an accident involving a motor vehicle. The Coroner is directed to make a report of the death and circumstances of the accident to the Division of Highway Safety in writing. The contents of the report and results of any test shall be used only for statistical purposes which do not reveal the identity of the deceased.

The provision that the contents of the report and the results of any test shall be used only for statistical purposes is a broad and complete restriction as to the use which may be made of the report and test results. The word "only" is defined as meaning "alone in its class, sole, single, exclusive, solely, this and no other, nothing else or more." *Hiner v. Hugh Breeding, Inc.,* 355

P.2d 549, 551[2] (Okl.1960). See also 67 C.J.S. pp. 498, 499.

By use of the word "only" the legislature has limited the use of the report and test results for statistical purposes solely, exclusively and for nothing else or more. This is the plain meaning of the statute when the word "only" is used.

Respondent and Amici contend the restrictive phrase, "shall be used only for statistical purposes," applies only to the use which the Director shall make of the information. However, the statute does not limit any person or agency. The limitation is directed to the use which may be made of the report and test results. The limitation on this use solely for statistical purposes results from the plain language employed.

The conclusion necessarily follows that this statute, written in plain English, restricts the use of the report and test results to statistical purposes. It inevitably follows that such report and test results cannot be made available to litigants or anyone else.

■ Respondent further contends that restricting the use of the report and test results to statistical purposes creates a conflict with §§ 109.180 and 109.190, RSMo 1969. Those sections provide that public records shall be open for inspection and copying at all reasonable times. However, § 109.180 restricts the application of that section by providing "except as otherwise provided by law." Likewise, § 109.190 provides "in all cases where the public or any person interested has a right to inspect." The legislature has provided under § 58.449 the report and test results are not public records and the public does not have a right to inspect such records. Thus, there is no conflict with the sections providing for the inspection and copying of public records.

2. Evidence of the blood content of a deceased is available. § 194.115 RSMo 1969, provides an autopsy may be performed on any body upon the consent of a very broad range of persons from the surviving spouse to a friend who assumes the right to control the disposition of the body. Further, § 58.725, RSMo 1975 Supp. grants the medical examiner the right to perform an autopsy when, in his opinion, it is necessary. The circumstances of the death under which the autopsy may be performed by the medical examiner are detailed in § 58.720, RSMo 1977 Supp. and include deaths by accident. § 58.725 requires a detailed description of the findings of the autopsy and the conclusions drawn therefrom to be filed in the office of the medical examiner. No restriction is placed on the use or availability of this report.

Respondent and Amici further contend that a denial of their right to the report and test results will make § 58.449 unconstitutional on the grounds it denies to them equal protection of the laws in violation of both the Missouri and United States Constitutions. This argument is based on a contention § 58.445 creates an unlawful classification between tests performed on persons who die more than four hours following an accident and tests performed on persons who die within four hours of an accident. No reason is advanced to demonstrate why this alleged arbitrary classification is discriminatory, however, the State suggests the effects of alcohol may be dissipated in the body over a period of time and a four-hour limit is reasonable. Amici, in their brief, agree with this suggestion.

■ The rule in this situation is stated in *State ex rel. Toedebusch v. Public Service Com'n,* 520 S.W.2d 38, 46[6] (Mo. banc 1975) as follows: "The only requirements the equal protection clause of the Fourteenth Amendment to the United States Constitution and Mo.Const. Art. III, § 40(4), (28), (30), prescribe is that such classification be based upon a reasonable ground (not arbitrary), and that the law operate equally upon all in the same class."

■ Equal treatment is afforded by the sections under consideration. The report and tests results are not available to anyone when a death occurs within four hours of the accident. A death occurring after four hours does not require a report or a test to be made, however, if such were made, it would not be restricted in its use. The law operates equally upon everyone. No unlawful classification or discrimination is discernible.

■ Amici further suggest that the statute unconstitutionally grants coroners immunity from testifying. The statute does not grant any immunity to coroners from testifying, but only restricts the use and disclosure of the report and the test results made by the coroner. As to any other information the statute in question does not prevent the coroner from testifying or grant to him any immunity.

The preliminary rule is made permanent.

SHANGLER, DIXON and SOMERVILLE, JJ., concur.

WASSERSTROM, J., concurs in separate concurring opinion.

PRITCHARD, C. J., dissents in separate dissenting opinion.

SWOFFORD, J., dissents in separate dissenting opinion.

WASSERSTROM, Judge, concurring.

I fully concur in the majority opinion and write this addendum only because the carefully considered dissent by Judge Pritchard deserves a response.

The dissent says the dispositive question is whether the restriction on the use of the blood test may be waived by plaintiff Thomas E. Girdner, and it observes that "this matter is not touched upon in the majority opinion." That omission in the majority opinion is explained by the fact that respondent made no such argument. In fact, at oral argument attorney for respondents expressly disclaimed any reliance upon this theory of waiver. Nonetheless, the dissent quite properly may raise the issue, because the respondent trial judge should be sustained if his action can be justified on any theory.

Turning to the merits of the argument advanced, the dissent asserts that "[i]t is for his [Thomas E. Girdner] protection, and others similarly situated, that the Legislature must be held to have intended to protect . . . ." That certainly *may* have been the underlying intention of the Legislature, but that is far from necessarily so. Other and quite different motivation may have led to the restriction in question.

As set forth in footnote 1 of the majority opinion, a number of other states have similar statutes, some of which disclose an underlying philosophy diverse and even contradictory to that of other states. Thus, the Nevada statute makes the findings open to the world; Colorado makes the findings available "to any interested party" and that

seems also the philosophy of the North Dakota statute; but Illinois, Minnesota, New York, Idaho and New Mexico seem to go on an opposite policy of forbidding use of the findings by any party in any litigation, criminal or civil. In light of this diversity of policies, no one can say with entire confidence just what policy was intended by the Missouri Legislature. That choice would necessarily be reduced to a matter of speculation.

Analysis of the statutes of other states also yields another point of interest. That study reveals a philosophy by at least some legislatures to treat all parties in interest with an even hand, either giving access to the test results to all parties or forbidding access to any party. This approach has an attractive feature of fairness, as opposed to according a one-sided advantage to the family of the deceased. If the Missouri statute were to be interpreted as having the opposite intention of granting a privilege solely available to the family of the deceased, then the family would waive the privilege if the test results were favorable to them but would stand on the privilege if the results were otherwise. An interpretation permitting such a result does not commend itself for adoption.

The safest course and indeed the only course open to this court is to give strict effect to the language of the statute which says that the results of the test "shall be used only for statistical purposes."

PRITCHARD, Judge, dissenting.

This proceeding was brought by relators to prohibit respondent from enforcing an order compelling them to comply with a subpoena duces tecum to produce a report made by respondent coroner to respondent director of the Division of Highway Safety, which was done in compliance with § 58.-445, RSMo (Laws 1973, p. 149, §§ 1, 2). This statute requires the coroner to make or cause to be made blood tests of a driver or pedestrian, who dies within 4 hours of and as a result of an accident involving a motor vehicle, to determine the presence and percentage concentration of alcohol, and drugs, if feasible, and include them in his report to the division of Highway Safety. § 58.449, RSMo (Laws 1973, p. 149, § 4), which relators contend gives them an absolute right to refuse to obey the subpoena duces tecum, is: "The contents of the report and results of any test made pursuant to the requirements or authorizations of sections 58.445 to 58.449 *shall be used only for statistical purposes which do not reveal the identity of the deceased.*" (Italics added.)

The underlying action, as shown by exhibits attached to the petition for writ of prohibition, was brought by Thomas E. Girdner, as beneficiary under two policies covering accidental death, a total of $8,400.00, of the insured, Robert L. Girdner, deceased, who was plaintiff's brother. It was alleged in Thomas' petition that Robert L. Girdner died January 25, 1975, "from injuries sustained in an accident." Thomas alleged that he gave defendant, Old American Insurance Company, and its manager of its Health Division, D. F. Butler, due notice of the accident and proof thereof, but defendants refused demand for payment. No specific reason was given for the refusal of the demand for payment. Old American's refusal, contained in its letter, was merely: "Information contained in our file indicates that Mr. Girdner's accident was due directly to a condition excluded by the policies." Copies of the policies were attached to the petition in the underlying action, certified copies of all the same being before this court as exhibits to the suggestions in opposition to the petition for writ of prohibition. One policy contains the clause, "The Company shall not be liable for any loss sustained or contracted in consequence of the Covered Person's being intoxicated or under the influence of any narcotic unless resulting from the advice of a physician." The other policy contains the clause, "This policy does not cover any loss caused, directly or indirectly, wholly or partly, by * * * (3) intoxication of the insured, or * * ."

There was a stipulation of the parties (plaintiff and defendants) in the underlying action that Robert L. Girdner was pro-

nounced dead at approximately 10:10 p. m., on January 25, 1975, as a result of having been in an automobile accident which occurred at approximately 9:40 p. m., on the same date, he being then the operator of a motor vehicle; that the parties requested of the Director of Highway Safety the contents of the records required and provided by § 58.445, pertaining to the said Robert L. Girdner, but were denied the request; and that the parties caused the director to be subpoenaed to produce the records, but he refused under oath to divulge the contents of the records, or to make them available to the parties, or to allow them to be inspected or reproduced.

The return to the writ of prohibition herein pleads, "3. None of the parties to the lawsuit in the Circuit Court of Mercer County, Missouri, being Thomas E. Girdner, Plaintiff, and Old American Insurance Company, and D. F. Butler, Defendants, has objected to or in any way sought to block discovery of the information which has given rise to this action, in fact, all of the parties have joined the attempts to obtain and discover the information by stipulation, direct questioning at deposition sessions of Relators and informal request." The traverse to the return does not deny this paragraph 3, so it and the other matters referred to above must be taken as true.

The dispositive question here is whether the provisions of § 58.449, that results of blood tests shall be used only for statistical purposes which do not reveal the identity of the deceased may be waived by a family member in interest such as plaintiff, brother of deceased, Thomas E. Girdner. This matter is not touched upon in the majority opinion.

Respondent does not precisely set forth in his points that the provisions of § 58.449 were waived by Thomas E. Girdner. It is said merely that the report is relevant to the subject matter (obviously the cause of death of decedent) and that it is not privileged. In the first instance, any report of blood test results to the Director of Highway Safety would have been privileged to Thomas E. Girdner as a member of the public. He is a member of that class entitled not to have, over his objection, the identity or the blood test results of a deceased disclosed. It is for his protection, and others similarly situated, that the Legislature must be held to have intended to protect for the purpose of saving them the embarrassment of having the fact of a family member having died in an automobile accident as a result of intoxication, yet preserving for preventive legislative measures the value of statistical data. The prohibition against the use of the reports and blood test results for only statistical purposes could not have been for the personal protection or privilege of coroners or the Director of Highway Safety.

Quite apparently here, the pleadings and motions before respondent which caused him to threaten to compel obedience by relators of the subpoena duces tecum were that the plaintiff had expressly waived any objection based upon statutory privilege. It is really in that posture that the application for writ of prohibition came before this court.

The words in § 58.449 "*shall* be used only for statistical purposes which do not reveal the identity of the deceased" are undoubtedly mandatory upon the Director of Highway Safety and coroners. See the construction of the word "shall", 82 C.J.S. Statutes § 380, p. 877; and *State ex rel. Laffoon v. Youngdahl*, 391 S.W.2d 605, 607 (Mo.App. 1965). The statute means, simply, that neither the director nor coroners may upon their own volition use blood test reports for anything but statistical purposes which do not reveal the identity of the deceased. Nor can a stranger to the benefit conferred, such as Old American Insurance Company in the underlying case, cause the information to be revealed over the objection of a person for whose benefit the statute was enacted. The statute imposes no restriction upon any protected member of the public in personally and expressly waiving the matter of revelation of the identity of the deceased and the results of any blood test performed upon his body.

The statute here does not declare that its violation shall be a misdemeanor and it contains no penalty for failure to comply with its provisions. "It may be stated as a general rule that legislation enacted to govern civil rights and contracts which does not carry criminal or penal provisions may be waived by those affected by such laws." 2A Sutherland, Statutory Construction, § 55.08, p. 398. See also 82 C.J.S. Statutes § 376, p. 874. Further rules are of value in determining the underlying issue in this case. "As a general thing, rights granted by statute may be waived unless the statute is intended to protect the general rights of the public rather than private rights. While one cannot waive a public obligation created by statute, he may waive a statutory requirement the purpose of which is to confer a private right or benefit, * * ." 28 Am.Jur.2d Estoppel and Waiver, § 164, p. 850. And, "Statutory rights may be waived or surrendered, in whole or in part, by the party to whom or for whose benefit they are given, if he does not thereby destroy the rights and benefits conferred upon or flowing to another in or from such statute or other legal or equitable source." 28 Am.Jur.2d Estoppel and Waiver, § 164, p. 851. See also § 165 following. By permitting Thomas E. Girdner to exercise his right of express waiver, a privilege which he as beneficiary and a member of deceased's family possesses, no violence is done to the rights of other members of the public who might desire to insist upon the secrecy of blood test reports and the identity of the deceased. There is here no anticipatory waiver as a condition to the issuance of the policies of insurance in the underlying action, but the waiver is presented after the fact of death.

No case has been found which directly rules that statutes such as § 58.449 may be waived by a person for whose benefit it was enacted. In *United States Life Insurance Company v. Mason*, 214 Va. 328, 200 S.E.2d 516, 517 (1973), however, it was ruled that there was no waiver merely by the plaintiff maintaining her action for benefits because the burden of proof was upon the insurance company to establish the exclusion of accidental death of the deceased being caused directly or indirectly by intoxication. The court said the Legislature, in enacting a statute similar to Missouri, intended that direct testimony as to results of blood alcohol tests shall no longer be admissible in civil litigation (obviously, as was the fact over the objection made by plaintiff). The court did say, "Assuming without deciding, that a civil litigant has the power to waive the provisions of Code § 19.1-42, we hold that there was no waiver by the beneficiary."

Footnote 2 at page 4 of the majority opinion is irrelevant. There is no fact in this case that an autopsy was performed or that the result of any autopsy was available. The only fact stipulated was that the blood test report here existed, and its production, by the assent of all the parties, would determine the key issue of the intoxication of deceased, and possibly end the litigation.

I respectfully dissent from the majority opinion for the reasons stated. I would quash the writ of prohibition as having been improvidently issued.

SWOFFORD, Chief Judge, dissenting.

I concur in the dissenting opinion of Pritchard, J. and would quash the writ of prohibition as having been improvidently issued. I do not find it speculative or even difficult to arrive at the conclusion that the legislative intent of Sections 58.445 to 58.-449, RSMo (Laws 1973) was to collect statistics in highway death accidents in order to promote highway safety for the public generally. It is equally clear to me that as a concomitant of this broad, general and salutary purpose the legislation specifically and clearly limited not only the use of the autopsy findings to "statistical purposes" but also mandated that the identity of the deceased was protected and cannot be revealed.

To my mind, all logic and reason lead irresistibly to the conclusion that this latter provision was intended as a protection to the surviving family or personal representa-

tives of the deceased. The plaintiff in the underlying case falls within such class. This statutory protection or privilege, as any other privilege, can be waived and was specifically and unequivocally waived by the plaintiff, as held in the dissenting opinion, with which I concur.