Patricia Ann **DANAHER**, and Burney B. Gibson, et al., Plaintiffs/Relators,

v.

**The Honorable Laurence R. SMITH and the Honorable William J. Marsh, Defendants/Respondents.**

**No. 35046.**

Missouri Court of Appeals, Western District.

Feb. 21, 1984.

Lyman Field, Kansas City, for plaintiffs/relators.

William R. Fish, Larry J. Tyrl, Kansas City, for defendants/respondents.

Before NUGENT, P.J., and DIXON and KENNEDY, JJ.

**1.** Unless otherwise indicated, all sectional references are to Revised Statutes of Missouri, 1978,

NUGENT, Presiding Judge.

This original proceeding in prohibition was brought by relators, plaintiffs in an underlying wrongful death action against defendant Madole. The object of the petition for a writ is to restrain the respondent judges from enforcing their respective orders compelling the Jackson County Coroner to comply with subpoenas duces tecum to produce at depositions the results of alcohol blood tests performed by her in 1980 on the bodies of plaintiffs' decedents. We issued our preliminary rule in prohibition.

Relators contend the rule should be made absolute because the application of § 58.-449 as amended in 1982 [1] impermissibly divested plaintiffs of their previously vested and substantial rights of non-disclosure under the statute, § 58.449, in effect when the accident occurred and when the blood alcohol tests and reports were made. We now quash the writ.

On November 26, 1980, plaintiff-relator Danaher's husband (driver) and plaintiff-relator Gibson's son (passenger) died in and as a result of an auto accident in Jackson County, Missouri. On November 28, 1980, the Jackson County Coroner performed alcohol blood tests on plaintiffs' decedents and reported the results to the Missouri Division of Highway Safety as required by §§ 58.445 and 58.449 R.S.Mo.1978.

The text of those statutes at that time read as follows:

> 58.445. *Deaths due to motor vehicle accidents—report, when—tests, when.* —1. If any driver or pedestrian within his jurisdiction dies within four hours of and as a result of an accident involving a motor vehicle, the coroner shall report the death and circumstances of the accident to the Missouri division of highway safety in writing. The report shall be made within five days of the conclusion of the tests required in subsection 2.
> 2. The coroner shall make or cause to be made such tests as are necessary to determine the presence and percentage

and subsequent amendments adopted in 1982, indicated by "(Supp.1982)."

concentration of alcohol, and drugs if feasible, in the blood of the driver or pedestrian. The results of these tests shall be included in the coroner's report to the division.

58.449. *Test results, how used.*—The contents of the report and results of any test made pursuant to the requirements or authorizations of sections 58.445 to 58.449 shall be used only for statistical purposes which do not reveal the identity of the deceased.

On August 24, 1981, the Gibsons brought suit for the wrongful death of their son, and the case was assigned to respondent Judge Marsh. On May 11, 1982, Mrs. Danaher sued for the wrongful death of her husband. The cause was assigned to respondent Judge Smith.

In August of 1982, §§ 58.445 and 58.449 were amended so as to provide:

58.445. *Deaths due to motor vehicle accidents—report, when—tests, when.* 1. If any person within his jurisdiction dies within four hours of and as a result of an accident involving a motor vehicle, the coroner or medical examiner shall report the death and circumstances of the accident to the Missouri division of highway safety in writing. The report shall be made within five days of the conclusion of the tests required in subsection 2.

2. The coroner or medical examiner shall make or cause to be made such tests as are necessary to determine the presence and percentage concentration of alcohol, and drugs, if feasible, in the blood of the deceased. The results of these tests shall be included in the coroner's or medical examiner's report to the division.

58.449. *Test results, how used, released, when.*—The contents of the report and results of any test made pursuant to the requirements or authorizations of sections 58.445 to 58.449 shall be used primarily for statistical purposes which do not reveal the identity of the deceased and shall not be public information; however, the contents of the report and the results of any test so made shall be released upon the issuance of a subpoena duces tecum by a court of competent jurisdiction for use in any civil or criminal action arising out of the accident.

On May 12, 1983, defendant Madole in the underlying wrongful death action, caused subpoenas duces tecum to be served on the county coroner directing her to bring the alcohol blood test results and reports to scheduled depositions in both cases. On May 18, 1983, motions for protective orders to prohibit the taking of the deposition and to quash the subpoenas duces tecum were filed in both cases. Respondent Judge Smith overruled the motion in the Danaher case, finding that § 58.449 (Supp.1982) was a procedural law. Respondent Judge Marsh also overruled the motion for a protective order. The filing of this proceeding in prohibition followed.

■ Prohibition is the proper remedy when a trial court makes an order that constitutes an abuse of discretion in discovery proceedings, *State ex rel. Charterbank of Springfield v. Donegan,* 658 S.W.2d 919, 924 (Mo.App.1983), or where the order exceeds the jurisdiction of the court, *State ex rel. Collins v. Donelson,* 557 S.W.2d 707, 709 (Mo.App.1977). *See also State ex rel. Richardson v. Randall,* 660 S.W.2d 699 (Mo.1983), where the Court, after *State ex rel. Morasch v. Kimberlin,* 654 S.W.2d 889 (Mo.1983) (en banc), issued a writ prohibiting the judge from granting the state's motion to divulge the name and address of expert with whom a criminal defendant has consulted but does not intend to call as a witness.

The sole issue for our consideration is whether or not § 58.449 (Supp.1982), which requires disclosure in certain circumstances of the contents of the report and results of any blood alcohol tests made pursuant to § 58.445 (Supp.1982), is to be applied retroactively. If the statute is to be applied retroactively, then the trial judges did not abuse their discretion or exceed their jurisdiction by issuing orders compelling compliance with the subpoenas duces tecum and the writ should be quashed. If, on the

other hand, the statute may not be applied retroactively, then the preliminary writ should be made permanent.

██ Article I, Sec. 13 of the 1945 Missouri Constitution, provides that no ex post facto law, nor law impairing the obligations of contracts nor retrospective in its operation shall be enacted. Retrospective or retroactive laws have been generally defined "as those which take away or impair vested rights acquired under existing laws, or create a new obligation, impose a new duty, or attach a new disability in respect to transactions or considerations already past." *State ex rel. St. Louis-San Francisco Railway Company v. Buder*, 515 S.W.2d 409, 410 (Mo.1974) (en banc); *Barbieri v. Morris*, 315 S.W.2d 711, 714 (Mo.1958); *Lucas v. Murphy*, 348 Mo. 1078, 156 S.W.2d 686, 690 (1941). Two exceptions have been carved out of the rule that a statute shall not be applied retrospectively: First, where the legislature shows a clear intent that the statute be applied retrospectively, and second, where the statute is procedural only and does not affect any substantive right of the parties. *State* ex rel. *St. Louis-San Francisco Railway Company v. Buder, supra.*

Relators contend that the amended statute meets neither of these exceptions and thus cannot be applied retrospectively. Here, the legislature was silent as to the retrospective application of said statute, therefore, the amended statute does not come within the first exception. To determine whether the amended statute fits within the second exception, we must first decide whether the relators acquired vested rights under the earlier version of § 58.449. If so, we must determine whether the amended statute took away or impaired those vested rights. *State ex rel. St. Louis-San Francisco Railway Company v. Buder, supra.*

Relators argue that they acquired vested rights of non-disclosure under the earlier section. They say that the amended statute impairs their rights by allowing disclosure of the results and reports of blood alcohol tests in certain circumstances and,

therefore, the amended statute affects substantive rights and cannot be applied retrospectively.

Respondents, on the other hand, contend that old § 58.449 did *not* create vested rights of non-disclosure in the family of a deceased whose blood was so tested. Thus, respondents argue that the amendment which allows disclosure in certain circumstances does not affect substantive rights, was procedural only, and as such can be applied retroactively.

The Missouri Supreme Court in *State ex rel. St. Louis-San Francisco Railway Company v. Buder, supra,* in determining whether the removal of the monetary ceiling in wrongful death cases could be applied to deaths occurring before the effective date of the change, considered whether the change was procedural or substantive. The court said, at 411:

> It is best to keep in mind that the underlying repugnance to the retrospective application of laws is that an act or transaction, to which certain legal effects were ascribed at the time they transpired, should not, without cogent reasons, thereafter be subject to a different set of effects which alter the rights and liabilities of the parties thereto. Merely to label certain consequences as substantive and others as procedural does not give sufficient consideration to this principle, and notions of justice and fair play in a particular case are always germane. . . .

Because we think that the earlier enactment of § 58.449 did not vest any right or privilege of non-disclosure in relators, we hold that the amended statute, § 58.449 (Supp.1982), did not alter any substantive rights of relators. No notions of justice or fair play are violated if the amended statute is applied here.

Respondents rely on expressions in earlier judicial opinions to the effect that no one possesses a vested right in having his controversy determined by existing rules of evidence, and other expressions to the effect that laws which change the rules of evidence relate to the remedy only, are

procedural and thus are not included in the constitutional ban against retroactive laws. *See e.g., Clark v. Kansas City, St. L. & C.R. Co.,* 219 Mo. 524, 118 S.W. 40, 43 (Mo.1909); *Messimer v. McCrary,* 113 Mo. 382, 21 S.W. 17, 19 (Mo.1893); *McCarthy v. Board of Trustees of Firemen's Retirement System of St. Louis,* 462 S.W.2d 827, 831 (Mo.App.1970); *Schulz v. Supreme Tent, Knights of Maccabees of the World,* 236 S.W. 903, 905 (Mo.App.1922). Although we think that some changes in the rules of evidence may indeed fall within the constitutional prohibition against retroactive laws, *see Beazell v. Ohio,* 269 U.S. 167, 170, 46 S.Ct. 68, 69, 70 L.Ed. 216 (1925), we think that the amended § 58.449 does not fall within that prohibition. Rather, we think the change made in § 58.449 was similar to that made in the statute involved in *O'Bryan v. Allen,* 108 Mo. 227, 18 S.W. 892 (1891). In the first trial in *O'Bryan,* the court received testimony from certain witnesses who were competent under the effective statute. An appeal was taken following the first trial. After the first appellate decision was published but before the retrial, the legislature altered the statute making those witnesses incompetent. The Supreme Court found that although the plaintiff may have benefited from the testimony of the witnesses, the plaintiff had no vested right in the testimony of a given witness. Thus, the court held that a law making a witness' testimony incompetent may be applied retroactively without violating the constitution. *Id.* at 893.

■ Similarly, a statute which enlarges the class of persons who may be witnesses, by removing disqualifications, does not violate the proscription against retroactive legislation. *See Thompson v. Utah,* 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061 (1898) (where this type of statute was held not to violate the *ex post facto* prohibition). And, a statute which makes heretofore inadmissible evidence admissible by removing disqualifications is permissible. However, a statute which abrogates the privilege of formerly privileged communications may indeed divest the privileged person of a vested right. Because it would affect substantive rights, that type of statute could not be applied retroactively.

■ We hold though that the amended § 58.449 merely removed the disqualification which was in effect under the prior statute. Old § 58.449 did not create a privilege; it simply prohibited certain uses of blood alcohol tests made pursuant to § 58.-445. The fact that old § 58.449 did not create a privilege becomes obvious when certain aspects of the traditional privileges are distinguished from § 58.449.

The policy behind the attorney-client and physician-patient privilege is to encourage full and frank disclosures. *See State ex rel. Husgen v. Stussie,* 617 S.W.2d 414 (Mo.App.1981). Confidentiality of communications is imperative to such relationships. *See State ex rel. Great American Insurance Co. v. Smith,* 574 S.W.2d 379 (Mo.1978); *Klinge v. Lutheran Medical Center of St. Louis,* 518 S.W.2d 157 (Mo. App.1974).

The policy behind § 58.449 was different. Confidentiality of the contents of the reports of blood alcohol tests was not essential to the making of the tests and the reports. The deceased had no choice in deciding whether to submit to such tests. § 58.445 required the county coroner under certain circumstances to perform the tests and make the reports. Although a policy behind old § 58.449 *may* have been to protect family members from embarrassment, while still preserving "for preventive legislative measures the value of statistical data," *State ex rel. Collins v. Donelson, supra,* at 713 (dissenting opinion), that policy would differ from the policy behind the more traditional privileges. The latter foster communication by promising confidentiality; the former merely guarantied confidentiality to already gathered information.

Another difference between the more traditional privilege and former § 58.449 is that privileges are personal and thus may be waived by the holder of them. *State ex rel. Husgen v. Stussie, supra; Walton v. Van Camp,* 283 S.W.2d 493 (Mo.1955). The attorney-client privilege belongs to the

client, *Erickson v. Civic Plaza National Bank of Kansas City*, 422 S.W.2d 373 (Mo. App.1967), and the physician-patient privilege belongs to the patient. *Randolph v. Supreme Liberty Life Ins. Co.*, 359 Mo. 251, 221 S.W.2d 155 (1949) (en banc). Former § 58.449 did not confer a privilege on any individual or group of individuals. The mandate "that the contents of the report and the results of any test shall be used only for statistical purposes" "is a broad and complete restriction as to the use which may be made of the report and test results." *State ex rel. Collins v. Donelson, supra,* at 710.

Although the majority opinion in *Donelson* does not expressly state the old § 58.-449 did not confer a privilege upon any individual or group of individuals, that inference is irresistible in the court's refusal to recognize or allow a waiver. The underlying suit in *Donelson* was brought by decedent's brother against decedent's life insurance company. Decedent died as a result of a car accident and the coroner performed the required tests. Both the plaintiff and defendant issued a subpoena duces tecum to the Director of Highway Safety and the county coroner, and later filed motions to compel compliance. The judge issued the order and the coroner and Director sought mandamus in this court. The majority granted the writ, holding that the statute, written in plain English, restricted the use of the report and test results to statistical purposes. The majority concluded "that such report and test results cannot be made available to litigants or to anyone else." *Id.* at 710.

Judge Pritchard, in his dissenting opinion, asserted that the majority opinion did not touch upon the dispositive issue of whether "the provisions of § 58.449, that results of blood tests shall be used only for statistical purposes which do not reveal the identity of the deceased may be waived by a family member in interest such as plaintiff, the brother of deceased ...." The majority opinion *does not* directly address that issue. Where the deceased's brother had clearly waived any privilege conferred upon him by § 58.449, however, the infer-

ence from the court's refusal to recognize any such waiver is that the majority did not view § 58.449 as vesting a privilege in a particular class of people, to-wit, the family of the deceased.

We think that old § 58.449 did not vest any right or privilege of non-disclosure in relators and thus the amended statute, § 58.449 (Supp.1982), did not alter any substantive rights of relators. The respondents did not exceed their jurisdiction by issuing orders compelling compliance with the subpoena duces tecum.

Accordingly, the writ is quashed.

All concur.